### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **KIMALETHA WYNN; and** | )( | **Civil Action No.: 18-cv-4848** |
| **JEANIQUE McGINNIS** *as next friend of* | )( | **(Jury)** |
| *K.Y., R.Y., and M.Y., minors;* | )( | |
| | )( | |
| *Plaintiffs,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **HARRIS COUNTY, TEXAS;** | )( | |
| | )( | |
| *Defendants.* | )( | |

### PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES **KIMALETHA WYNN and JEANIQUE McGINNIS,** *as next friend of K.Y., R.Y., and M.Y., minors;* herein complaining of HARRIS COUNTY, TEXAS and will show the Court the following:

### I.  NUTSHELL and PRELIMINARY FACTS

1.      The Harris County jail has an atrocious record of failing to prevent the suicide of inmates despite many suicides and suicide attempts and warnings from the Texas Commission on Jail Standards, (the "TCJS"), the governmental body charged with county-jail oversight. Between 2005 and 2015, 199 inmates died in the custody of the Harris County Sheriff's Office. Many died from lack of medical care; 26 committed suicide and 22 were killed by deputies.

2.      Despite all the previous suicides and TCJS warnings known suicidal 32-year old Vincent Dewayne Young committed suicide on February 13, 2017 by hanging with a blanket (hanging by bedding is the primary method of inmate suicide) *when he was in a jail infirmary cell.* Prior to his death, Young made suicidal statements and exhibited other mental health problems. The Harris

County Sheriff's Office fired Detention Officer Abraham Romero for failing to perform his appointed and required rounds regarding Vincent's custody and ultimate death.

3.     Further, Harris County is fighting open records requests regarding Vincent displaying a pattern and practice of hiding evidence and information from the public preventing their knowledge of the practices in the Harris County jail and hindering changes that can be made to suicide prevention practices. Several months after Vincent's death Sheriff Edward Gonzalez announced sweeping suicide prevention policy and practice changes.

4.     Plaintiffs sue under decades-old Fifth Circuit precedent that inadequate suicide prevention jail practices and customs caused their loved one's death. *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 636 (5th Cir. 1996) (*en banc); Flores v. County of Hardeman,* 124 F.3d 736, 738 (5th Cir. 1997).

## II.  JURISDICTION & VENUE

5.      This Court has jurisdiction over Plaintiffs' federal claims, under 28 U.S.C. § 1331 and 2201, 42 U.S.C § 1983 and 1988, and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims, if any.

6.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the incidents at issue took place in Harris County, Texas, within the United States Southern District of Texas.

## III.  PARTIES

7.     PLAINTIFF KIMALETH WYNN is a resident of Harris County, Texas.

8.     PLAINTIFF JEANIQUE McGINNIS, as next friend of K.Y., R.Y., and M.Y., minors; are residents of Louisiana.

9.     DEFENDANT HARRIS COUNTY, TEXAS is a governmental body existing under the

laws of the State of Texas and can be served with process by serving the County Judge of Harris County, Texas at 1001 Preston, Suite 911, Houston, Texas 77002 or wherever the County Judge is she is found.

## IV.  ADDITIONAL FACTS

10.     Vincent Dewayne Young, 32, was married to Kimaletha Wynn and had three minor children, K.Y., R.Y., and M.Y., with Jeanique McGinnis.

11.     Vincent was booked into the Harris County jail February 7, 2017. He complained of backpain, high blood pressure, anxiety and depression to jail staff.

12.     On February 8, 2017 Vincent was accessed at the Mental Health Clinic at the Harris County jail. He was prescribed medications for high blood pressure, pain and detoxification. Young admitted to jail medical staff that he had taken Lisinopril (an ACE inhibitor used to treat high blood pressure), HCTZ (a diuretic also used to treat high blood pressure), Norco (an opioid pain medication) and Xanax (a benzodiazepine for anxiety and depression).

13.     On February 10, 2017, Vincent was assessed again as he was complaining of anxiety and depression. Vincent told staff that he has had been taking Xanax since he was 17 years old. Vincent also stated to jail medical staff that he felt defensive around others when not taking Xanax. He also complained of racing thoughts, paranoia, that others were talking about him, causing him to sit in the corner.  Suicidal tendencies are a well-known side effect of Xanax withdrawal. Weaning off (gradually lowering doses) Xanax is best practices for Xanax withdrawal. Jail medical staff determined no mental health services were needed at the time.

14.     Two days later, on February 12, 2017, Harris County Detention Officer Levant Dogan ("D.O. Dogan") was in the jail pod control center (a/k/a picket) when Vincent approached the pod window to speak with D.O Dogan. Dogan observed Vincent was depressed. Vincent did not say

anything to D.O. Dogan. Later, Inmate Marlon Witherspoon approached the picket and told D.O. Dogan he thought Vincent was suicidal. Vincent had told Inmate Witherspoon he wanted to kill himself.  D.O. Dogan then called jail rovers (detention officers who help where needed) who took Vincent to a holdover cell while D.O. Dogan completed a psychiatric screening form. At approximately 10:59 pm Vincent was again evaluated by jail medical staff. Irregular heart beat due to withdrawal was noted.

15.       On February 13, 2017 Vincent was admitted to the jail infirmary for Xanax (benzodiazepine) drug withdrawal, high blood pressure, and for being a hospital returnee. A psychological evaluation was not done at the time but was pending after detoxification. Vincent was placed in an infirmary cell by himself. Vincent was found hung by a bed sheet in his infirmary cell at 7:10 pm by Detention Officer Abraham Romero ("D.O. Romero") who was doing safety rounds checking on inmates. D.O. Romero noted that Vincent was warm to the touch and not rigid. Other detention officers and jail medical staff arrived and performed CPR, however, Vincent did not recover. The medical examiner ruled Vincent's cause of death as suicide and manner of death as hanging.

16.       The round just previous to the 7:10 pm round where Vincent was found hanging was at 5:56 pm.—a period of 1 hour and 14 minutes, which is far in excess of the required observation periods. Despite knowing of Vincent's medications and psychological evaluation, no one entered Vincent's cell from 1:50 pm to 7:10 pm. prior to his death.

17.       The Texas Rangers investigated the death of Vincent Young and found 21 discrepancies in the round sheet for Vincent including several for rounds recorded but not done. D.O. Romero was eventually fired.

18.       D.O. Romero told investigating Rangers that he was too busy escorting medical staff into

infirmary cells to perform all the rounds. D.O. Romero blamed inadequate staffing by Harris County, Texas for failure to do rounds.

19.      On February 21, 2017, the TCJS cited the Harris County jail for not doing rounds every 30 minutes and exceeding the allowable round time by 44 minutes in the case of Vincent's death.

20.      Between 2005 and 2015, 199 people died in custody of the Harris County Sheriff's Office. Some died due to poor medical care, 26 committed suicide, and 22 were killed by deputies.

21.      Prior to Vincent's death jail watch commanders were not required to conduct random audits that compared detention officers' written inmate observational rounds records with video footage to verify accuracy.

22.      Prior to Vincent's death supervisors did not verify that detention officers conducting their rounds were obtaining firsthand evaluation of the inmates' attitudes and temperament, nor observing the physical, mental, and emotional condition of each inmate to detect signs of distress or need for medication, psychological or other special services.

23.      Prior to Vincent's death supervisors were not meeting with detention officers to iterate and reiterate the importance of properly conducting inmate welfare rounds.

24.      Prior to Vincent's death there were no video surveillance cameras in those health services cells which typically house inmates requiring close observation such as Vincent's cell.

25.      Prior to Vincent's death the Sheriff's Office did not explore technology applications that would assist in ensuring observational rounds are conducted in compliance with policy such as placing sensors at each cell door that a jailer must touch with an identification to show the jailer was at a certain inmate's cell at a certain time as employed by many jails.

26.      Prior to Vincent's death there were several instances of failure to do rounds in a timely manner.

27.        Prior to Vincent's death there was not enough staff at the jail to ensure detention officers could do rounds in a timely manner.

28.        Eight years *before* Vincent's death, Harris County was notified by the Department of Justice in a 2009 twenty-three page report that it should inter alia, update and improve medical and mental health quality assurance and training programs to ensure compliance with generally accepted correct medical standards, employ sufficiently qualified staff, increase video surveillance in critical housing areas, and alter staffing patterns to provide additional direct supervision of housing units. However, Harris County failed to enact or did not completely and appropriately enact the improvements which the Department of Justice noted.

## V.  CAUSES OF ACTION

## 42 U. S. C. SECTION 1983 VIOLATIONS OF PLAINTIFF'S CIVIL RIGHTS

29.        Plaintiffs incorporate by reference all of the preceding paragraphs.

30.        Harris County was acting under color of state law and, therefore, is liable under 42 U.S.C. § 1983. Harris County is liable under Section 1983 because it deprived Vincent of constitutional rights provided by federal law that occurred under color of state law and were caused by state actors. *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 636 (5th Cir. 1996) (*en banc); Flores v. County of Hardeman,* 124 F.3d 736, 738 (5th Cir. 1997).

31.        Vincent had a right under the Fourteenth Amendment and Eighth Amendments to the United States Constitution while incarcerated to be free from indifference to his medical and mental health needs. Harris County treated Vincent with unreasonable medical care and was deliberately indifferent, negligent and grossly negligent to his serious medical needs, mental health needs and wellbeing.

32.        Defendant Harris County as a matter of policy, practice, custom and/or procedure did not

have adequate staffing, had a practice and custom of not doing rounds, had a custom and practice of not checking to see if detention officers were doing rounds, and failed to provide and maintain adequate equipment to prevent suicide despite past warnings from the Texas Commission on Jail Standards.

33.     Defendant Harris County, their employees, and their agents, failed to train and failed adequately supervise the actions and omissions of the jail detention officers and employees and agents of the Harris County, Texas jail.

34.     Prior to his death Vincent did not receive adequate medical care for his withdrawal symptoms due to the policies of the Harris County jail causing much pain and mental anguish including suicidal ideations.

35.     Vincent's death was due to the acts and omissions of Defendants and those acts and omissions violated his constitutional right to due process, to be free from unreasonable search and seizure and the privileges and immunities and rights guaranteed by the Fourteenth Amendment, making Defendants liable to Plaintiffs under and pursuant to 42 U.S.C. § 1983, 1985.

## VI.  DAMAGES

36.     Plaintiffs incorporates by reference all of the preceding paragraphs.

37.     Plaintiffs experienced, and in all likelihood will experience, at least great pain and suffering in the past and in the future, great mental anguish in the past and future, medical and living expenses in the past and future, loss of enjoyment of life, loss of future earnings capacity, loss of consortium, loss of financial support and household services, comfort, love and society, and plaintiffs seek exemplary damages. Plaintiffs also bring claims for violations of his Fourth, Fifth, and Fourteenth Amendment rights.

38.     Plaintiffs have been damaged by the loss of companionship, consortium and support that would have been provided by Vincent but for his preventable death while in custody.

*Plaintiffs' Original Complaint*                                                             Page **7** of **9**

39.     Vincent suffered great mental anguish and pain in the minutes and hours before his death and such is actionable through his estate and funeral expenses are recoverable as well.

## VII.  ATTORNEYS' FEES

40.     Plaintiffs are entitled to recover attorneys' fees and expenses under 42 U.S.C. § 1983 and §1988.

## VIII.  JURY TRIAL

41.     Plaintiffs demand trial by jury on all issues triable to a jury.

## IX.  PRAYER

Plaintiffs pray the Court enter judgment and award damages for Plaintiffs against the Defendants, jointly and severally;

Plaintiffs pray that the Court find that Plaintiffs are the prevailing parties in this case and award attorneys' fees and costs and all litigation expenses, pursuant to federal and state law, as noted against the Defendants;

Plaintiffs pray that the Court award pre- and post-judgement interest;

Plaintiffs pray that the Court award punitive damages against all individually named Defendants to Plaintiffs;

Plaintiffs pray that the Court award costs of court; and

Plaintiffs pray that the Court grant such other and further relief as appears reasonable and just, to which, Plaintiffs shows themselves entitled.

Respectfully submitted,

*/s/ Randall L. Kallinen*
Randall L. Kallinen
TBN: 00790995
FBN: 19417
attorneykallinen@aol.com

KALLINEN LAW PLLC
511 Broadway Street
Houston, Texas 77012
(713) 320-3785
(713) 893-6737 -- facsimile

*/s/ Charles H. Peckham*
Charles H. Peckham
TBN: 15704900
FBN: 15770
cpeckham@pmlaw-us.com

Mary A. Martin
TBN:  00797280
FBN:  12272
mmartin@pmlaw-us.com

PECKHAM MARTIN, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044
(713) 493-2255 – facsimile