## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **KIMALETHA WYNN INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF VINCENT YOUNG; JEANIQUE MCGINNIS AS NEXT FRIEND OF K.Y., R.Y., AND M.Y., MINORS; VINCENT LEDAY; SHARONDA DONATTO AS NEXT FRIEND OF P.Y.; PHYLLIS SMITH AS NEXT FRIEND OF C.Y.; RESHAN GEORGE AS NEXT FRIEND OF M.Y.; AND MELANIE YOUNG AS REPRESENTATIVE OF THE ESTATE OF GWENETTA YOUNG,** | § § § § § § § § § § § § § § § | |
| *Plaintiffs,* | § | **CIVIL ACTION NO. 4:18-CV-04848** |
| VS. | § | **JURY TRIAL REQUESTED** |
| | § | |
| **HARRIS COUNTY, TEXAS; ABRAHAM ROMERO; LEESA BROWN; LAMONICA KINCH; PATRICIO LAU; HARRIS CENTER FOR MENTAL HEALTH AND IDD; and ED GONZALEZ,** | § § § § § § § | |
| *Defendants.* | | |

## <u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>

TO THE HONORABLE JUDGE KEITH P. ELLISON:

Comes now KIMALETHA WYNN individually, and as representative of the ESTATE OF VINCENT YOUNG; JEANIQUE MCGINNIS as next friend of K.Y., R.Y., and, M.Y., Minors; and, Intervenor Plaintiffs[1] VINCENT LADAY; SHARONDA DONATTO as next friend of P.Y.; PHYLLIS SMITH as next friend of C.Y.; RESHAN GEORGE as next friend of M.Y.; and, MELANIE YOUNG as Representative of the Estate of GWENETTA YOUNG (collectively as "Plaintiffs") complaining of DEFENDANTS HARRIS COUNTY, TEXAS; ABRAHAM ROMERO; LEESA BROWN; LAMONICA KINCH; PATRICIO LAU; HARRIS CENTER FOR MENTAL HEALTH AND IDD ("IDD" herein) ; and ED GONZALEZ and would show the following:

## A.     INTRODUCTION

1.     This case arises as a result of Vincent Young's death on February 13, 2017, while in the custody of Defendant Harris County, Texas (Harris

---

[1] VINCENT LADAY's Intervention was granted [Doc. 18].  SHARONDA DONATTO as next friend of P.Y.; PHYLLIS SMITH as next friend of C.Y.; RESHAN GEORGE as next friend of M.Y.; and, MELANIE YOUNG as Representative of the Estate of GWENETTA YOUNG are each intervenors but better described plaintiffs herein,and reurge their previous  motions to intervene. Intervention is warranted as of right because the wrongful death beneficiaries' of Plaintiff's' decedent include Intervenor-Plaintiffs Vincent Laday; Melanie Young as Representative of the Estate of Gwenetta Young; Sharonda Donatto as next friend of P.Y.; Phyllis Smith as next friend of C.Y.; or Reshan George as next friend of M.Y. cannot be fully represented or protected by Plaintiff Kimaletha Wynn and/or Plaintiff Jeanique McGinnis alone. See Fed. R. Civ. P. 24(a)(2).
Alternatively, permissive intervention is appropriate in this matter because Plaintiff-Intervenor has claims that share with this action common questions of law and fact. See Fed. R. Civ. P. 24(b)(1)(B). and all plaintiff parties file this second amended complaint jointly.

County). His family was not notified of his death until February 14, 2017, a day after he was found unresponsive in his cell.

2.      Harris County has an atrocious record of failing to prevent the suicide of inmates in its jail despite a lengthy history of near–epidemic levels of suicide attempts and deaths of Harris County inmates as well as warnings from the Texas Commission on Jail Standards (TCJS), the governmental body charged with county-jail oversight.

3.      Between 2005 and 2015, 199 inmates died in the custody of the Harris County Sheriff's Office.  Many of those 199 died from lack of medical care.

4.      Twenty-six Harris County inmates died by suicide in the 2005–2015 timeframe.

5.      Twenty-two inmates were killed by deputies in the 2005–2015 time frame.

6.      Despite the rash of earlier suicides and TCJS warnings, a known-suicidal inmate, 32-year-old Vincent Dewayne Young (and Plaintiffs' decedent), died by suicide on 13 February 2017 by hanging with a blanket (hanging by bedding is the primary method of inmate suicide) *when he was in a jail infirmary cell.*

7.      Prior to his death, Young made suicidal statements and exhibited other mental health problems.

8.      Leesa Brown, NP, employed by Physician's Resource, spoke with and examined Young on February 8, 2017, and determined that despite his psychiatric history, he should discontinue the Xanax prescribed by an outside physician, without consulting the outside physician, and ordered a taper to discontinue him on his needed medication.

9.      Then on February 10, 2017, Lamonica Kinch, LPHA, employed by Harris Center for Mental Health and IDD determined that Young did not need mental health services at the time of his assessment despite notations of a 45 on his Global Assessment of Functioning (GAF), a diagnosis of psychotic disorder and a past history of psychiatric disorder. Young was also exhibiting signs and symptoms of depression when assessed.

10.     Harris Center for Mental Health and IDD failed to supervise or train Lamonica Kinch on dealing with inmates with mental health issues, and withdrawals.

11.     Leesa Brown, Harris Center for Mental Health and IDD and Lamonica Kinch were aware of Mr. Young's serious medical need or should have been, since they assessed him, but ignored and failed to

provide timely adequate medical care of his withdrawal symptoms after the deprivation of his physical dependant Alprazolam, and suicide prevention.

12.    Young's blood pressure soared out of control and on February 12, 2017, he was found unresponsive in his cell and rushed to Ben Taub Hospital.

13.    He was returned to the Harris County Jail, although his blood pressure was still too high to return him to the Infirmary.

14.    Once his blood pressure was lowered, he was returned to the Infirmary.

15.    Young was then seen by Patricio Lau, MD, an employee of Mint Medical Physician, who noted his refusal to communicate.

16.    Approximately two hours later Dr. Lau examined Young again and noted that he was likely to be withdrawing, but no special orders were entered.

17.    Dr. Lau recognized Mr. Young's serious medical need to address his withdrawal symptoms but did nothing to address the serious medical need of withdrawing from Alprazolam.

18.    Mr. Young was returned to the infirmary, unsupervised after blood pressure seemed to be stabilized.

19.    Prior to returning to the infirmary, Cleo Hughes, RN, a Harris County employee, noted that Young had a potential for noncompliance to self-care.

20.    A Nurse Practitioner, Emily Belcher, employed by Physician Resources, noted that Young complained of "restlessness and appeared agitated," yet a few hours later he was returned to the Infirmary with no special Instructions but failed to follow up.

21.    Once back at the infirmary, Young was essentially ignored. No one checked on Young for a significant period of time, at least an hour, but likely longer and thereafter he was discovered to have hung himself.

22.    The Harris County Sheriff's Office fired Defendant (and former Detention Officer) Abraham Romero.

23.    Romero failed to perform his appointed and required rounds regarding Vincent's custody and ultimate death.

24.    Romero's explanation to investigators was that he was unable to because the jail was understaffed.

25.    Further, Harris County has fought open records requests regarding Mr. Young. These requests include basic open records for videos, and

documents related to his death, and custody, after the family recognized what looked to be hair between his teeth.

26.     Harris County's obstruction displays a pattern and practice of hiding evidence and information from the public – preventing the public from learning of Harris County's practices in its jail and hindering changes that can be made to suicide prevention practices.

27.     Several months after Mr. Young's death Sheriff Edward Gonzalez announced sweeping suicide prevention policy and practice changes. However, no proof exists that any such changes were made and there have been suicides since those sweeping changes were announced. Plaintiffs bring this suit under decades-old Fifth Circuit precedent that inadequate suicide prevention jail practices and customs caused their loved one's death. *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 636 (5th Cir. 1996) (*en banc); Flores v. County of Hardeman,* 124 F.3d 736, 738 (5th Cir. 1997).

### B.     JURISDICTION & VENUE

28.     This Court has jurisdiction over Plaintiffs' federal claims, under 28 U.S.C.1331 and 2201, 42 U.S.C 1983 and 1988, and the Fourth, and Fourteenth Amendments to the United States Constitution, and

supplemental jurisdiction under 28 U.S.C.1367(a), to hear Plaintiffs' state law claims if any.

29.     Venue is proper in this Court under 28 U.S.C.1391(b) because the incidents at issue took place in Harris County, Texas, within the United States Southern District of Texas.

## C.     PARTIES

30.     PLAINTIFF KIMALETHA WYNN is Vincent Young's widow and is a resident of Harris County, Texas.

31.     PLAINTIFF KIMALETHA WYNN as Representative of the ESTATE OF VINCENT DEWAYNE YOUNG is a resident of Harris County, Texas. On May 8, 2019, Plaintiffs filed an Application to Appoint a Dependent Administrator with Waivers, signed by all Plaintiffs. Additionally, Application to Determine Heirship was filed on May 8, 2019. *See*, In The Estate of Vincent Young, Deceased, Cause Number 475,928, In the Probate Court Number One (1) of Harris County, Texas.

32.     PLAINTIFF JEANIQUE MCGINNIS as next friend of K.Y., R.Y., and M.Y., minors, are residents of Louisiana.

33.     PLAINTIFF VINCENT LADAY was Vincent Dewayne Young's father and is a resident of Harris County, Texas.

34.     PLAINTIFF SHARONDA DONATTO as next friend of P.Y. is a resident of Florida.

35.     PLAINTIFF MELANIE YOUNG as Representative of the Estate of GWENETTA YOUNG is a resident of Harris County, Texas.

36.     DEFENDANT HARRIS COUNTY, TEXAS is a governmental body existing under the laws of the State of Texas. It has been served and filed its response.   Harris County also operates a law enforcement agency, the Harris County Sheriff's Office, that, among other duties, operates and controls the Harris County jail system.

37.     Defendant Harris County employed persons including its policymaker, Ed Gonzalez, as Sheriff, and Romero, as deputy Jailer who, in the course and scope of their employment, were required to observe, watch over, and manage persons placed in custody within the Harris County Jail.

38.      At all relevant times herein, Defendant, Harris County is a "person" under 42 U.S.C. §1983. Harris County acted under color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein. Harris County has appeared herein for all purposes and may be served through its attorney of record.

39.     DEFENDANT ABRAHAM ROMERO is an individual who, upon information and belief, is a resident of the State of Texas. Romero has been served and has filed his response. He is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

40.     DEFENDANT LEESA BROWN is an individual who, upon information and belief, is a resident of the State of Texas. Brown has been served and has filed her response. She is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

41.     DEFENDANT LAMONICA KINCH, LPHA, is an individual who, upon information and belief, is a resident of the State of Texas. Kinch has been served and has filed her response. She is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

42.     DEFENDANT HARRIS CENTER FOR MENTAL HEALTH AND IDD  is a private entity that works with agencies within the State of Texas. It has been served and has filed its response. It is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

43.     DEFENDANT PATRICIO LAU is an individual residing in Harris County, Texas. Lau has been served and has filed his response. He is a

"person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

44.     DEFENDANT ED GONZALEZ is an individual who, upon information and belief, is a resident of the State of Texas. Gonzalez has been served and has filed his response. He is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

### D.     ADDITIONAL FACTS

45.     Vincent Dewayne Young, 32 years old at the time of his death, was married to Plaintiff Kimaletha Wynn.

46.     Young was the father of seven children. He had three minor children, K.Y., R.Y., and M.Y., with Plaintiff Jeanique McGinnis.

47.     Plaintiff Vincent Laday was the father of Vincent Dewayne Young.

48.     Mr. Young was also the parent of minor child, P.Y. (appearing by and through her mother and next friend Plaintiff Sharonda Donatto), minor child, C.Y. (appearing by and through his grandmother and next friend Plaintiff Phyllis Smith), minor child, M.Y. (appearing by and through her mother and next friend Plaintiff Valene Hoskins), and minor child, M.Y. (appearing by and through her legal guardian and next friend Plaintiff Reshan George).

49. Vincent's mother, Gwenetta Young, survived Vincent but died in August 2018. Ms. Gwenetta Young's wrongful death claims are brought by her estate representative, Plaintiff Melanie Young.[2]

50. Vincent Young was booked into the Harris County jail on February 7, 2017, as a pre-trial detainee. During intake, he complained of back pain, high blood pressure, anxiety and depression to jail staff.

51. On February 8, 2017, Young was assessed at the Mental Health Clinic at the Harris County jail. He was prescribed medications for high blood pressure, pain, and detoxification. Young advised the jail medical staff that he had taken Lisinopril (an ACE inhibitor used to treat high blood pressure), HCTZ (a diuretic also used to treat high blood pressure), Norco (an opioid pain medication) and Xanax (Alprazolam, a benzodiazepine for anxiety and depression).

52. On February 10, 2017, Mr. Young was assessed again because he was complaining of anxiety and depression.

53. It was noted that Young advised the staff that he had been taking Xanax since he was 17 years old.

---

[2] Texas does not allow claims of a descendant for wrongful death to survive his/her death. Plaintiff's claims are brought solely under 42 U.S.C. 1983 federal claims for loss of inheritance damages.

54.     Young also told jail medical staff that he felt defensive around others when not taking Xanax.

55.     He also complained of racing thoughts, paranoia, and that others were talking about him, causing him to sit in the corner.

56.     Suicidal tendencies are a well-known side effect of Alprazolam/Xanax withdrawal, i.e. benzodiazepine withdrawal syndrome.

57.     Weaning off (gradually lowering doses of) benzodiazepines such as Alprazolam/Xanax is the best practice to avoid or otherwise reduce the severity of the symptoms of benzodiazepine withdrawal.

58.     In addition to the tapering of Alprazolam/Xanax monitoring is also required.

59.     The substitute for Alprazolam/Xanax ordered for Young also named suicidal tendencies as a side effect.

60.     However, and despite Young's history of mental health disorders, Harris County medical staff determined no mental health services were needed at the time.

61.     During his February 10, 2017, Defendant LaMonica Kinch, LMHP, determined no mental health services were needed and entered that determination into the electronic medical record.

62. Two days later, on February 12, 2017, Harris County Detention Officer Levant Dogan ("D.O. Dogan") was in the jail pod control center (a/k/a "picket") when Mr. Young approached the pod window to speak with D.O Dogan. Dogan observed Mr. Young "to be depressed." Mr. Young did not say anything to Dogan.

63. Later, Inmate Marlon Witherspoon approached the picket and told Dogan he thought Mr. Young was suicidal.

64. Young had told Witherspoon he wanted to kill himself, as documented.

65. Dogan then called jail rovers (detention officers who help where needed) who took Mr. Young to a holdover cell while Dogan completed a psychiatric screening form.

66. At approximately, 10:59 p.m., Mr. Young was again evaluated by the jail's medical staff. Irregular heartbeat due to withdrawal was noted.

67. On February 13, 2017, Vincent Young was admitted to the jail infirmary for Xanax (benzodiazepine) drug withdrawal, high blood pressure, and for being a hospital returnee, serious medical needs.

68.     A psychological evaluation was not done at the time. Mr. Young was placed, by himself, in a large infirmary cell with areas that he could escape view from a passerby.

69.     Young was found hanging by a bed sheet in his infirmary cell at 7:10 p.m. by Detention Officer Abraham Romero ("D.O. Romero") who was doing safety rounds checking on inmates.

70.      Romero noted that Vincent was warm to the touch and not rigid.

71.     Other detention officers and jail medical staff arrived and performed CPR; however, Vincent did not recover.

72.     The medical examiner ruled Vincent Young's cause of death as suicide and manner of death as hanging.

73.     The round just previous to the 7:10 p.m. round where Vincent was found hanging was at 5:56 pm.—a period of 1 hour and 14 minutes, which is far in excess of the required observation periods.

74.     Despite knowing of Vincent's medications, psychological evaluation and his expression of suicidal ideations to another inmate which was then relayed to Jail Staff, no one entered Vincent's cell from 1:50 p.m. to 7:10 p.m.

75.    The Texas Rangers investigated the death of Vincent Young and found 21 discrepancies in the round sheet for Vincent including several for rounds recorded but not done.    D.O. Romero was eventually fired as a result of Mr. Young's death.

76.    Romero told investigating Rangers that he was too busy escorting medical staff into infirmary cells to perform all the rounds.

77.    Romero attributed his inability to perform rounds to inadequate staffing by Harris County. Inadequate staffing was pervasive in the Harris County jail and well known. The Harris County Sheriff, Ed Gonzalez did nothing after taking over as sheriff to alleviate the understaffing problems in the Harris County Jail.

78.    Sheriff Gonzalez—as the policymaker of the Harris County Sheriff's office—is responsible for the custody and care of the inmates.

79.    His duties towards the inmates include healthcare of the inmates. The responsibility of care cannot be delegated.

80.    He is responsible or hiring, training, supervising the medical providers, including private medical providers like Dr. Lau, within the jail to care for the inmate and creating, reviewing, and implementing, the medical and mental health policies and procedures at the Harris County jail.

81.     On February 21, 2017, TCJS cited the Harris County jail for not doing rounds every 30 minutes and exceeding the allowable round time by 44 minutes in the case of Vincent's death.

82.     Between 2005 and 2015, 199 people died in custody of the Harris County Sheriff's Office, as a result of its policies and practices.

83.     Some of the deaths from 2005 died due to poor medical care.

84.     30 deaths were attributed to inmates committing suicide; and, 22 were killed by deputies.

85.     Beginning in 2017, during the time in which the policymaker, Ed Gonzalez, has been sheriff there have been 20 additional in-custody deaths, including four by suicide.

## Harris County Suicides, Hanging/ Strangulation deaths from 2015-Present

| Date | Name | Facts |
|------|------|-------|
| 2/19/2015 | Antonio Lee Williams | On February 19, 2015, at approximately 0126 hours, Antonio Lee Williams was found alone in his cell hanging from a shoestring which was tied around his neck and secured to intercom speaker. Officers cut him down and began CPR. Williams was pronounced dead at 0148 hours. |
| 6/13/2016 | Christopher Hendricks | On June 13, 2016, Christopher Hendricks (SPN # 01846651) was booked into the Harris County Jail. Hendricks was housed in the 1200 Baker medical infirmary, dormitory MD1, for detoxification treatment. On June 17, 2016, at 2005 hours, in MD1 alerted staff members that Hendricks was hanging by his neck from a sheet tied to a showerhead. At 2043 hours, HFD transported Hendricks to St. Joseph's Hospital where he was placed on life support in the Neuro Intensive Care Unit. On June 27, 2016, at 1:30 p.m.Hendricks was pronounced deceased by Doctor Barriga. |
| 12/1/17 | Maytham Alsaedy | On February 27, 2015, @ approximately 06:00 hours, Alsaedy was processed into the Harris County Jail. On November 30, 2017, at approximately 22:53 Staff entered the cell and found Alsaedy, with a sheet around his neck, hanging from a smoke detector. On November 30, 2017, at approximately 23:43 hours, Alsaedy was transported to St. Joseph Hospital by HFD, where he was pronounced dead by Dr. Shin at 00:06 hours, December 1, 2017 |
| 7/25/2018 | Eldon Jackson | On July 25, 2018, at approximately 0118 hours, while conducting security rounds, Detention Sergeant C. Gould observed Jackson laying on the floor in 2J1-D and instructed D.O. Woods to check on Jackson. D.O. Woods discovered Jackson was hanging by a bed sheet which had been tied to the desk in the cell, at approximately 0124. Jackson was transported to Ben Taub. At 0239 hours, Jackson was pronounced deceased by attending physician Dr. M. Huffman |
| 8/15/2018 | Deborah Ann Lyons | Preliminarily, the video indicates on August 14, 2018, at 1758 hours, Lyons exited the cell 4D1A to receive insulin. Lyons hanging inside the door. Lyons was transported to Ben Taub Hospital. On August 15, 2018, at 1357 hours Lyons was pronounced deceased by attending physician Dr. M. Tolcher. |
| 1/16/2019 | Tracey Whited | On January 16, 2019, Tracy Whited, died at Ben Taub Hospital. Whited, a white female, 42 years of age was in custody of the Harris County Sheriff's Office. On Monday, January 14, 2019, @ app. 0725 hrs. A sheet that was fastened around Whited' s neck and an upper bunk. Staff removed the sheet using a cut-down tool and began CPR. Whited was pronounced deceased by attending physician Dr. M. Davis. Case referred to the Texas Rangers, HCSO Homicide and IAD for review and disposition |

3

---

[3] **Harris County Suicides, Hanging/ Strangulation deaths from 2015-Present**
**2/19/2015 Antonio Lee Williams**. On February 19, 2015, at approximately 0126 hours, Antonio Lee Williams was found alone in his cell hanging from a shoestring which was tied around his neck and secured to intercom speaker. Officers cut him down and began CPR. Williams was pronounced dead at 0148 hours.
**6/13/2016 Christopher Hendricks.** On June 13, 2016, Christopher Hendricks (SPN # 01846651) was booked into the Harris County Jail. Hendricks was housed in the 1200 Baker Street medical infirmary, dormitory MD1, for detoxification treatment. On June Hendricks was found  hanging by his neck from a sheet tied to a showerhead. On June 27, 2016, at 1:30 p.m.Hendricks was pronounced deceased by Doctor Barriga.
**12/1/17 Maytham Alsaedy.** On February 27, 2015, @ approximately 06:00 hours, Alsaedy was processed into the Harris County Jail. On November 30, 2017, at approximately 22:53 Staff entered the cell and found Alsaedy, with a sheet around his neck, hanging from a smoke detector. Alsaedy was transported to St. Joseph Hospital by HFD, where he was pronounced deceased by Dr. Shin
**7/25/2018 Eldon Jackson.** On July 25, 2018, at approximately 0118 hours, while conducting security rounds, Detention Sergeant C. Gould observed Jackson laying on the floor in 2J1-D and instructed D.O. Woods to check on Jackson. D.O. Woods discovered Jackson was hanging by a bed sheet which had been tied to the desk in the cell, at approximately 0124. Jackson was transported to Ben Taub. At 0239 hours, Jackson was pronounced deceased by attending physician Dr. M. Huffman
**8/15/2018 Deborah Ann Lyon.**  Preliminarily, the video indicates on August 14, 2018, at 1758 hours, Lyons exited the cell 4D1A to receive insulin. Lyons hanging inside the door. Lyons was transported to Ben Taub Hospital. On August 15, 2018, at 1357 hours Lyons was pronounced deceased by attending physician Dr. M. Tolcher.
**1/16/2019 Tracey Whited.** On January 16, 2019, Tracy Whited, died at Ben Taub Hospital. Whited, a white female, 42 years of age was in custody of the Harris County Sheriff's Office. On Monday, January 14, 2019, @ app. 0725 hrs. A sheet that was fastened around Whited' s neck and an upper bunk. Whited was pronounced deceased by attending physician Dr. M. Davis.

86.     Prior to Vincent Young's death, jail watch commanders were not required to conduct random audits that compared detention officers' written inmate observational rounds records with video footage to verify accuracy.

87.     Prior to Vincent's death, Harris County supervisors did not verify that detention officers were conducting their rounds. The "rounds" required obtaining a firsthand evaluation of the inmates' attitudes and temperament, and observing the physical, mental, and emotional condition of each inmate to detect signs of distress or need for medication, psychological or other special services.

88.     Prior to Vincent's death, supervisors were not meeting with detention officers to iterate and reiterate the importance of properly conducting inmate welfare rounds.

89.     Prior to Vincent's death, there were no video surveillance cameras in those health services cells which typically house inmates requiring close observation such as Vincent.

90.     Prior to Vincent's death, Harris County did not explore technology applications that would assist in ensuring observational rounds are

conducted in compliance with policy such as placing sensors at each cell door that a jailer must touch with an identification to show the jailer was at a certain inmate's cell at a certain time.

91. The sensor technology used in other local jails.

92. Prior to Vincent's death, there were several instances of failure to do rounds in a timely manner.

93. Prior to Vincent's death, there was not enough staff at the jail to ensure detention officers could do rounds in a timely manner, according to defendant Abraham Romero.

94. Eight years *before* Vincent's death, Harris County was notified by the Department of Justice in a 2009 twenty-three page report that it should, *inter alia*, update and improve medical and mental health quality assurance and training programs to ensure compliance with generally accepted correct medical standards, employ sufficiently qualified staff, increase video surveillance in critical housing areas, and alter staffing patterns to provide additional direct supervision of housing units.

95. However, Harris County failed to enact or did not completely and appropriately enact the improvements recommended by the Department of Justice.

96.     Defendant Harris County's customs, policies, and/or practices regarding rounds and health/safety checks to be made on its inmates by its officers caused Vincent Young's constitutional rights to be violated and, ultimately, caused his death.

97.     More specifically, while Harris County may have purported to have certain policies in place regarding the frequency, care, and thoroughness for when and how health/safety checks were to be conducted, specifically with respect to inmates known or suspected to be at greater risk for the potential to be subject to harm, the actual custom, policy, and practice was to perform such checks at the convenience of Harris County and its employees.

98.     These customs and practices were, at the time of Vincent Young's death, Harris County's *de facto* policies for suicide prevention.

99.     Harris County has a practice of delaying medical care. As a result of its guards failing to make rounds every fifteen minutes for inmates identified to engage in self-harm, it clearly results in a delay in medical care. That was the case with the previous suicides deaths, Mr. Young's death, and the four suicide deaths that have happened after Mr. Young's.

100.    Harris County also has the policy to require its inmates to use substitute drugs instead of the continuation of any Xanax prescription (or generic form) treatment upon entering the  Harris County jail.

101.    Sheriff Gonzales acted under the color of law when he adopted and ratified the no-Xanax practices. He through his medical providers denies any continuation of prescriptions for inmates that enter the Harris County jail with the need for treatment with Xanax.

102.    Gonzalez, like his predecessors, also allowed the implemented policies and procedures requiring substitutions of Xanax, with a different, not generic medication, without the requirement of monitoring the administration of any substitutions thereof.

103.    These actions of denying Xanax to inmates, requiring an inadequate substitute medications Librium and valium medications that have well known side effects including suicide which resulted in Young's constitutional rights being violated.

104.    Sheriff Gonzalez is responsible for inmate healthcare, including Mr. Young's health, safety, and welfare, which Sheriff Gonzalez wholly failed to care for due to his willful blindness and outright deliberate indifference in delegating this duty to insufficient medical providers and jailers, and

implementing an unwritten no-Xanax policy or monitoring inmates subject to the substitution.

105.  The United States Department of Justice ("DOJ") issued a memorandum entitled "Investigation of the Harris County Jail" ("2009 DOJ Memorandum"). The DOJ concluded generally that certain conditions in the Jail violate the constitutional rights of detainees.

106.  The many constitutional deficiencies identified by the DOJ, are specifically pertinent to this case:

a.  "staffing limits, and some problematic practices"

b.  "HH's medical record suggested that he had a history of not eating, but staff did not initially refer him to a psychiatrist for assessment. After six months in the Jail, HH complained of depression, and staff finally referred HH to a psychiatrist. Mental health staff, however, did not conduct an initial psychiatric evaluation until three weeks after HH complained of depression. Mental health staff noted that HH appeared to be depressed. During the next two months, HH received medication but did not see a psychiatrist. HH ended up in an altercation and had to be placed in isolation. Two days later, he began vomiting blood. At the time of our tour, HH had been housed in administrative separation for more than 18 months

and had been involved in various altercations with staff. Given the nature of HH's mental health condition, the Jail's delays in providing mental health treatment and evaluation likely contributed to HH's continuing mental decline and behavioral disturbances."

c.      "II entered the Jail with a history of seizures, but apparently did not receive seizure medications at intake. II experienced a seizure 19 days after arrival at the Jail. II also had a history of cutting. There was no follow-up on this psychiatric issue at all."

d.      "JJ served time in the Jail on multiple occasions. Staff medicated JJ without following generally accepted correctional medication standards. Without an initial screening, the Jail staff involuntarily medicated JJ and housed him in the mental health department's acute treatment cellblock. Staff then repeatedly treated JJ with both anti-psychotic and mood-stabilizing medications without adequate laboratory studies or proper monitoring, placing the detainee at risk of sudden death."

e.      "During intake, LL reported a mental health history that included risk factors for suicide. The Jail staff did not refer LL to mental health services. Approximately 3 weeks later, LL lacerated his neck."

f. "Inadequate Treatment and Psychotropic Medication Practices. In a large urban detention center with a heavy mental health caseload, staff needs to have access to a variety of treatment resources. Such resources include an array of different types of therapy, medication, and intensive supervision in order to address different types of mental illness, and varying levels of patient acuity Jail mental health staff have access to some mental health resources, but those resources are not sufficient given the size of the mental health caseload. The Jail has few treatment program options available for detainees with mental illness. The Jail uses medications, additional staff monitoring, and some structured housing for detainees with mental illness. For most mental health conditions, the primary intervention is a medication order, often with inadequate follow-up even for the most seriously ill. Indeed, once medical staff prescribes medications, they often cannot or do not routinely follow-up on those detainees unless the detainees themselves request care. This is a substantial departure from generally accepted correctional standards. Notably, detainees also reported that there are significant delays when they request care."

107.    The DOJ submitted recommendations to the Harris County Judge, Harris County Attorney, and the Harris County Sheriff. Despite the DOJ's

2009 recommendations, deliberate indifference to the inmate's medical care continued.

108. Harris County has continued intentionally and consciously disregarded the DOJ's 2009 admonitions and recommendations, administration after administration, including the Gonzalez administration.

109. A grand jury also indicted another Harris County jailer, Michael Holley, 31, for two misdemeanor charges of assault-bodily injury during incidents they said occurred in the 1200 Baker Street jail.

110. On December 14, 2016, Holley, a civilian detention officer, was walking with an inmate in handcuffs on December 14, 2016, as he escorted inmate's jail's infirmary.

111. Authorities said surveillance video shows the inmate turning to face Holley, who then punched the inmate in the face multiple times and threw him to the ground.

112. In *Case 4:15-cv-02155 Salcedo*, The court found that guards hindered the ability of medical professionals to assess and attend to Lucas's medical needs and watched Lucas die are capable of supporting § 1983 claims for denial of medical care.

113.    In 2017, a Harris County Jail inmate, Cavales Prater was adjudicated insane and found not guilty of murder as a result, he was placed in a solitary cell as he waited to be transported to the facility he would be housed during his time in custody. He was not monitored after he was placed in a solitary cell, because of the failure to monitor he was able to harm himself by securing possession of a razor and severing his penis.

114.    In February 2017, when Mr. Young was identified to be suicidal but not monitored the same policies and practices of Harris County of not monitoring inmates that have indicated they were suicidal.

115.    The 2009 DOJ Memorandum recommended remedial action. Among other "recommended remedial measures" the DOJ stated, "The Jail should prohibit the use of chokeholds and hogtying."

116.    The DOJ also recommended that Harris County "alter its procedures for cell extractions and other use of force situations to ensure that staff is utilizing appropriate force techniques."

117.    The DOJ submitted these recommendations to the Harris County judge, Harris County Attorney, and Sheriff Adrian Garcia, who was the sheriff on the date of the report.

118.    Gonzalez does not dispute he follows the same practice as his predecessors Ron Hickman, and Adrian Garcia and the practices detailed in the 2009 DOJ was the practice when Defendant Romero failed to monitor Mr. Young.

119.    Despite any official policies that may be in writing, Harris County has had actual knowledge of, has permitted and condoned the custom and widespread practice of failing to monitor inmates as prescribed by statute every 15 minutes and detainees in the Harris County jail.

120.    The practice continued to at least February 2017, and beyond, as evidenced by the 3 other suicides after Mr. Young's death.

121.    In addition to the constitutional violations for failure to provide adequate medical care, Harris County has a longstanding practice of shielding information related to its officer's unconstitutional conduct from coming to light through the use of seeking an attorney general's opinions alleging criminal investigation, or outright denials of basic information, including names, as in this case.

122.    In 4:18-cv-01586, *Phillip, et. al. v. Harris County, et. al.* Harris County refused to provide the name of a nurse the Plaintiff sought to add to

a lawsuit, which was later discovered to be Rita Okojie by the process server.

123.   In 4:18-cv-00413, *Vincent Henderson v. Harris Count*y, Harris County refused to voluntarily provide the names of individuals the Plaintiff sought to add to a lawsuit.

124.   Ed Gonzalez was Sheriff, and one of the county's policymakers, of Harris County for over one month from January 1, 2017, until February 14, 2017.

125.   Harris County Sheriff's office has a practice of denying its inmates of adequate medical care, prior to Sheriff Gonzalez taking office and the custom continued after he took office.

126.   He is made aware of each use of force complaint and determines what discipline should be enacted as a result of the use of force.

127.   Ed Gonzalez, as the Harris County Sheriff, was deliberately indifferent to failure to monitor and provide adequate medical care by detention officers, and medical providers.

128.   At the time of Mr. Young's death, Gonzalez's tenure as Sheriff had been short, but it does not excuse the fact that he made no effort to

investigate the effectiveness of the suicide prevention policy from the previous administrations.

129.   Sheriff Gonzalez used almost all of the practices and policies of previous administrations but he did make changes to some of those policies, after Mr. Young's death.

130.   The discontinuation of Alprazolam medication policy was not one of the policies that Sheriff Gonzalez believed was important enough to make changes to, even though Harris County medical providers had a history of failing to provide inmates of Harris County with medication.

131.   Adrian Garcia failed to make any changes to the inmate medical care since the 2009 DOJ report, detailed herein, and Gonzalez concedes he has not made changes.

132.   Facts supporting the Monell claims are set out quite clearly in other past and pending suits.

133.   Accordingly, Harris County is directly liable under § 1983 for Plaintiffs' claims asserted herein.

134.   In 2017, Texas enacted Senate Bill 1849, known as "the Sandra Bland Act." The law requires county jails to continue medication for inmates upon entry and release from the jail and to collect information used

to make a determination of mental illness or intellectual disability. A written assessment of collected information will be submitted to a magistrate and mental health expert if potential substance abuse, mental illness or intellectual disability exists. If the need arises and is reasonable, pending charges may be suspended and an individual may be diverted to a treatment facility. In the event of a death in custody, the custodial agency will begin an investigation until a representative of an outside agency is on scene. In addition, electronic monitoring will be in place to ensure timely security checks for the welfare of those incarcerated.

135.    The constitutional requirement was clearly there but was spelled out in this Act. Unfortunately, the bill was not signed until June 2017, four months after Mr. Young's death.

136.    These customs, practices and de facto policies resulted in the constitutional violations that caused Vincent Young's death.

## E.       CLAIMS

**42 U. S. C. SECTION 1983 VIOLATIONS OF VINCENT YOUNG'S CIVIL RIGHTS PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENT, AND MEDICAL NEGLIGENCE**

137.    Plaintiffs incorporate by reference all of the preceding paragraphs.

138. Plaintiffs bring their respective constitutional claims against Abraham Romero, in his individual capacity; Leesa Brown, in her individual capacity; Lamonica Kinch, in her individual capacity; Patricio Lau, in his individual capacity; Harris Center For Mental Health and IDD; and Ed Gonzalez in his individual capacity as policymaker for Harris County, and in his individual capacity; and, Harris County in its adoption of the unconstitutional policies.

139. Plaintiffs incorporate by reference all of the preceding paragraphs.

140. Harris County and each individual defendant were acting under color of state law and, therefore, is liable under 42 U.S.C.1983. Harris County is liable under Section 1983 because it deprived Vincent Young of constitutional rights provided by federal law that occurred under color of state law and were caused by state actors.

141. Vincent Young had a right under the Fourth, and Fourteenth to the United States Constitution while incarcerated to adequate medical care, including his mental health needs. Harris County failed to provide Vincent Young with adequate medical care and was deliberately indifferent, negligent and grossly negligent to his serious medical and mental health needs and wellbeing.

142.    Defendant Harris County as a matter of policy, practice, custom and/or procedure did not have adequate staffing, had a practice and custom of not doing rounds, had a custom and practice of not checking to see if detention officers were doing rounds, failed to provide and maintain adequate equipment to prevent suicide despite past warnings from the Texas Commission on Jail Standards that resulted in the pattern and custom of not properly monitoring its inmates that it was aware posed a serious risk of harming themselves.

143.    Defendant Harris County, their employees, and their agents failed to train and failed adequately supervise the actions and omissions of the jail detention officers and employees and agents of the Harris County, Texas jail, on the monitoring of its inmates to reduce the risk of self-harm like suicide.

144.    In addition, it had a practice and custom to deprive its inmates of certain prescriptions, namely alprazolam, as it was trained to do as required by National Commission on Correctional Health Care (NCCHC)[4] certified standards. Prior to his death, Vincent Young did not receive adequate medical care for his withdrawal symptoms due to the policies of the Harris

---

[4] NCCHC establishes standards for health services in correctional facilities, operates a voluntary accreditation program for institutions that meet those standards, produces and disseminates resource publications, conducts educational conferences, and offers a certification program for correctional health professionals.

County jail of discontinuing Alprazolam which resulted in much pain and mental anguish including suicidal ideations.

145.   Vincent Young's death was due to the acts and omissions of Defendant and those acts and omissions violated his constitutional right to due process, to be free from unreasonable search and seizure and the privileges and immunities and rights guaranteed by the Fourteenth Amendment, making Defendant liable to Plaintiffs under and pursuant to 42 U.S.C. §§ 1983, 1985.

146.   In the alternative to the civil rights claims against the medical providers, Dr. Lau, Kinch, and Plaintiffs assert the medical providers were grossly negligent in their conduct and individual mental health and medical care of Young by failing to monitor or provide an adequate substitute for Alprazolam or address withdrawals from Alprazolam with appropriate care. Plaintiffs bring this alternative claim under Tex. Civ. Prac. & Rem. Code § 74.001 et seq.

### **Claims Against Defendant Abraham Romero - Violations Of Texas Constitution, Fourth Amendment, And Fourteenth Amendment, Under 42 U.S.C. Section 1983**

147.   Plaintiffs incorporate by reference all of the preceding paragraphs.

148.   Abraham Romero is a "person" under 42 U.S.C. §1983. Harris

County acted under color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein in the course and scope of his employment was required to monitor inmates every 15 minutes.

149.    Romero admits that he failed to monitor Vincent Young as required every 15 minutes.

150.    During the time of Romero's failure to monitor Vincent Young died by suicide.

**Claims Against Defendant Leesa Brown- Violations Of Texas Constitution, Fourth Amendment, And Fourteenth Amendment, Under 42 U.S.C. Section 1983, and Tex. CPRC Chapter 74 Medical Negligence Claims.**

151.    Plaintiffs incorporate by reference all of the preceding paragraphs.

152.    Leesa Brown is a "person" under 42 U.S.C. §1983. Harris County acted under color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein in the course and scope of her employment.

153.    Leesa Brown, NP, is a nurse practitioner and is employed by Physician's Resource.

154.    She was required to prescribe medications and had prescriptive

authority since July 10, 2012.

155.    She spoke with and examined Mr. Young on February 8, 2017, and determined that despite his psychiatric history, he should discontinue the Xanax treatment prescribed by an outside physician, without consulting the outside physician, and ordered he discontinue his needed medication.

**Claims Against Defendant Lamonica Kinch- Violations Of Texas Constitution, Fourth Amendment, And Fourteenth Amendment, Under 42 U.S.C. Section 1983 and Tex. CPRC Chapter 74 Medical Negligence Claims.**

156.    Plaintiffs incorporate by reference all of the preceding paragraphs.

157.    Lamonica Kinch is a "person" under 42 U.S.C. §1983. Harris County acted under color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein in the course and scope of her employment.

158.    Ms. Kinch was the Harris County Jail counselor who determined that Young did not need any mental health services/treatment, despite his reported history of anxiety and depression.

159.    Her judgment that Young did not require mental health services/treatment was also was coupled with the abrupt cessation of

Xanax, prescribed to Young by a physician, which cessation was ordered by the medical professionals at the Harris County Jail.

160.    Kinch was deliberately indifferent to Mr. Young's serious medical needs.

161.    As a result of NP Kinch's deliberate indifference to Mr. Young's serious medical needs, Mr. Young continued to experience withdrawal symptoms including suicidal thoughts and took his own life.

**Claims against Defendant Dr. Patricio Lau- Violations of Texas Constitution, Fourth Amendment, and Fourteenth Amendment, Under 42 U.S.C. Section 1983**

162.    Plaintiffs incorporate by reference all of the preceding paragraphs.

163.     Dr. Patricio Lau is a  "person" under 42 U.S.C. §1983. Harris County acted under color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein. in the course and scope of his employment, was required to provide Vincent Young with adequate medical.

164.    Dr. Lau was an employee of Mint Medical, a Physician.

165.    He examined and noted Mr. Young's refusal to communicate.

166.   Approximately two hours later Dr. Lau examined Young again and noted that he was likely to be withdrawing, but no special orders were entered.

167.   Dr. Lau recognized Mr. Young's serious medical need to address his withdrawal symptoms but did nothing to address the serious medical need of withdrawing from Alprazolam.

168.   Mr. Young was returned to the infirmary, unsupervised after blood pressure seemed to be stabilized.

169.   As a result of Dr. Lau's deliberate indifference to Mr. Young's serious medical needs, Mr. Young continued to experience withdrawal symptoms including suicidal thoughts and took his own life.

## Claims Against Defendant Ed Gonzalez- Violations Of Texas Constitution, Fourth Amendment, And Fourteenth Amendment, Under 42 U.S.C. Section 1983

170.   Plaintiffs incorporate by reference all of the preceding paragraphs.

171.   Ed Gonzalez is a  "person" under 42 U.S.C. §1983. Harris County acted under color of law and pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein. in the course and scope of his employment, was required to observe, watch over, and manage persons placed in custody within the

Harris County Jail. As sheriff has the duty of care of his inmates health and safety, the duty may not be delegated.

172.    When Harris County's Sheriff, Ed Gonzalez took office in January 2017 he did nothing to alleviate the understaffing problems in the Harris County Jail.   Sheriff Gonzalez—as the policymaker of the Harris County Sheriff's Office—is responsible for the custody and care of the inmates. His duty to care for the inmates include health care of the inmates. The responsibility of care cannot be delegated. He is responsible for hiring, training, supervising the medical providers, including private medical providers like Dr. Lau, within the jail to care for the inmate and creating, reviewing, and implementing, the medical and mental health policies and procedures at the Harris County jail. On February 31, 2017, TCJS (Texas Commission on Jail Standards) cited the Harris County jail for not doing rounds every 30 minutes and exceeding the allowable round time by 44 minutes in the case of Vincent's death. From 2017 since the policymaker, Ed Gonzalez has been sheriff there have been 20 additional in custody deaths, four by suicide.

173.    The sweeping suicide prevention policy and practice changes after Mr. Young's death do not absolve him of prior constitutional violations,

rather support he had the authority to make the constitutionally inadequate changes prior to Mr. Young's death.   As a result, *Inadequate staffing was pervasive in the Harris County jail and well known*.

174.   He was personally involved in delegating the duty of inmate care to his deputies, and medical care providers, Romero, Brown, Kinch, Lau, and IDD.

175.   Prior to Vincent Young's death jail watch commanders were not required to conduct random audits that compared detention officers' written inmate observational rounds records with video footage to verify accuracy.

176.   Prior to Vincent's death Harris County supervisors did not verify that detention officers conducted their rounds. The "rounds" required obtaining a firsthand evaluation of the inmates' attitudes and temperament, nor observing the physical, mental, and emotional condition of each inmate to detect signs of distress or need for medication, psychological or other special services.

177.   Prior to Vincent's death supervisors were not meeting with detention officers to iterate and reiterate the importance of properly conducting inmate welfare rounds.

178.   Prior to Vincent's death, there were no video surveillance cameras in those health services cells which typically house inmates requiring close observation such as Vincent's cell.

179.   Prior to Vincent's death Harris County did not explore technology applications that would assist in ensuring observational rounds are conducted in compliance with policy such as placing sensors at each cell door that a jailer must touch with an identification to show the jailer was a certain inmate's cell at a certain time as employed by many jails.

180.   Prior to Vincent's death, there were several instances of failure to do rounds in a timely manner.

181.   Prior to Vincent's death, there was not enough staff at the jail to ensure detention officers could do rounds in a timely manner.

182.   Eight years *before* Vincent's death, Harris County was notified by the Department of Justice in a 2009 twenty-three page report that it should inter alia, update and improve medical and mental health quality assurance and training programs to ensure compliance with generally accepted correct medical standards.

183.   Harris County also has the policy to require its inmates to use substitute drugs instead of the continuation of Alprazolam treatment upon entering the Harris County jail.

184.   Sheriff Gonzalez acted under the color of law when he adopted and ratified the no-Xanax practices. He through his medical providers denies any continuation of prescriptions for inmates that enter the Harris County jail with the need for treatment with Xanax.

185.   He also allowed the implemented policies and procedures requiring substitutions of Xanax, with a different, not generic medication, without the requirement of monitoring the administration of any substitutions thereof.

186.   These actions of denying Xanax to inmates, requiring an inadequate substitute medications Librium and Valium medication that have well-known side effects including suicide resulted in Young's constitutional rights being violated.

187.   Sheriff Gonzalez is responsible for inmate healthcare, including Mr. Young's health, safety, and welfare, which Sheriff Gonzalez wholly failed to care for due to his willful blindness and outright deliberate indifference in delegating this duty to insufficient medical providers and jailers, and

implementing and unwritten no-Xanax policy or monitoring inmates subject to the substitutions.

188. Their customs, practices and *de facto* policies resulted in the constitutional violations that caused Vincent Young's death.

**Claims Against Defendant Harris Center For Mental Health and IDD-Violations Of Texas Constitution, Fourth Amendment, And Fourteenth Amendment, Under 42 U.S.C. Section 1983 and Tex. CPRC Chapter 74 Medical Negligence Claims.**

189. Plaintiffs incorporate by reference all of the preceding paragraphs.

190. IDD is a private entity. It is contracted to provide medical mental health care services to of the Harris County jail.

191. IDD was formerly known as Mental Health and Mental Retardation Authority (MHMRA)

192. IDD was contracted to provide mental healthcare for the inmates at the Harris County Jail in February 2017. It employed LaMonica Kinch.

193. Its employees tasked with the responsibility of mental health care of Vincent Young were deliberately indifferent to his serious mental health medical needs

**Claims Against Defendant Harris County, Texas- Monell Claims Due
To Violations Of Texas Constitution, Fourth Amendment, And
Fourteenth Amendment, Under 42 U.S.C. Section 1983**

194.    Plaintiffs incorporate by reference all of the preceding paragraphs.

195.    Defendant Harris County, a governmental entity and is a "person" under 42 U.S.C. §1983. It was acting under color of state law and, therefore, is liable under 42 U.S.C. §1983.

196.    Defendant Harris County, their employees [which would include Gonzalez], and their agents, failed to train and failed to adequately supervise the actions and omissions of the jail detention officers and employees and agents of the Harris County jail. Harris County acted pursuant to certain customs, policies, and practices that were the moving force behind the constitutional violations asserted herein.

### F.        DAMAGES

197.    Plaintiffs incorporate by reference all of the preceding paragraphs. Plaintiffs experienced, and in all likelihood will experience, at least great pain and suffering in the past and in the future, great mental anguish in the past and future, loss of enjoyment of life, loss of consortium, loss of financial support and household services, comfort, and love and society, loss of inheritance. Plaintiffs seek exemplary damages. Plaintiffs also bring

claims for violations of Vincent Young's Fourth, Fifth, and Fourteenth Amendment rights.

198. Plaintiffs have been damaged by the loss of companionship, consortium, and support that would have been provided by Vincent Young but for his preventable death while in custody.

199. Vincent Young suffered great mental anguish and pain in the minutes and hours before his death and such is actionable through his estate and funeral expenses are recoverable as well.

## G.  TOLLING PROVISIONS

200. Tolling of the statute of limitations is required. Plaintiffs seek to plead any applicable tolling provisions against any defendant that might assert a bar to suit based on limitations and conduct discovery on any defense of limitations including, but not limited to, Tex. Civ. Prac. & Rem. Code §16.062.

## H.  ATTORNEYS' FEES

201. Plaintiffs are entitled to recover attorneys' fees and expenses under 42 U.S.C.1983 and §1988.

## I.  JURY TRIAL

202. Plaintiffs demand trial by jury on all issues triable to a jury.

## J.    PRAYER

203.    Plaintiffs pray the Court enter a judgment and award damages for the Plaintiffs against the Defendants; Plaintiffs pray that the Court finds that Plaintiffs are the prevailing parties in this case and award attorneys' fees and costs and all litigation expenses, pursuant to federal and state law, as noted against the Defendants;

204.    Plaintiffs pray that the Court award pre- and post-judgment interest;

205.    Plaintiffs pray that the Court award punitive damages against all individually named Defendants to Plaintiffs;

206.    Plaintiffs pray that the Court award costs of court; and Plaintiffs pray that the Court grant such other and further relief as appears reasonable and just, to which, Plaintiffs shows themselves entitled.


Respectfully Submitted,

**Kallinen Law PLLC**
Randall Kallinen
/s/Randall Kallinen
Randall L. Kallinen
TBN: 00790995
attorneykallinen@aol.com
KALLINEN LAW PLLC
511 Broadway Street
Houston, Texas 77012
(713) 320-3785

**OF COUNSEL:**
**Peckham Martin, PLLC**
Charles H. Peckham
TBN: 15704900
cpeckham@pmlaw-us.com
Mary A. Martin
/s/Mary A. Martin
TBN: 00797280
mmartin@pmlaw-us.com
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044
(713) 493-2255 – facsimile
Attorneys for Plaintiffs:
Kimaletha Wynn
individually,

and as representative of the
Estate of Vincent Young;

Jeanique Mcginnis as next
friend of K.Y., R.Y., and,
M.Y., Minors

The Lewis Law Group
/s/U. A. Lewis
U. A. Lewis
State Bar No. 24076511
Federal ID: 1645666
PO Box 27353
Houston, Texas 77227
Myattorneyatlaw@gmail.co
m
Attorney for Plaintiffs:
Sharonda Donatto as Next
Friend Of P.Y.;
Phyllis Smith as Next
Friend Of C.Y.;

Reshan George as Next
Friend Of M.Y.; and,
Melanie Young as
Representative Of The
Estate Of Gwenetta Young,

Melugin Law Firm, PLLC
By: /s/ Joe Melugin
Joseph C. ("Joe") Melugin
Attorney in Charge
State Bar No. 24054038
Federal Id. 876851
902 Heights Boulevard
Houston, Texas 77008
Telephone: (713) 299-7506
Telecopier: (713) 863-1161
joe@meluginlaw.com
Attorney for Plaintiff:
Vincent Laday

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing has been forwarded to all the following counsel of record in accordance with the District's ECF service rules on this 13th day of May 2019.

/s/U.A. Lewis

U. A. Lewis