United States District Court
Southern District of Texas
**ENTERED**
August 25, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KIMALETHA WYNN, *et al*, § <br> § <br> Plaintiffs, § <br> VS. § <br> § <br> HARRIS COUNTY, TEXAS, *et al*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 4:18-CV-04848 |

## **MEMORANDUM AND ORDER**

On July 8, 2021, the Court held a hearing on the Motions to Dismiss of Defendants Leesa Brown, Patricio Lau, Harris County, and Ed Gonzalez. (Docs. 95, 97, 98). For the reasons stated on the record, the Court granted Brown's Motion to Dismiss, as well as her request for severance and final judgment. The Court also ruled that Plaintiffs had adequately pled a medical negligence claim against Lau but took under advisement the issues of the § 1983 claim against Lau and his qualified immunity defense. As to Harris County and Sheriff Gonzalez in his official capacity, the Court found that Plaintiffs had adequately pled a claim for municipal liability. Gonzalez re-urged dismissal of claims against him in his individual capacity, so the Court also took that issue under advisement. Gonzalez thereafter filed an Amended Motion to Dismiss the claims against him in his individual capacity. (Doc. 127).

After considering the Motions, the parties' briefs and supplemental briefs, the parties' oral arguments, and all applicable law, the Court determines that the Motions to Dismiss of Defendants Lau, Gonzalez (in his official capacity), and Harris County must be **DENIED** in full. Gonzalez's individual arguments are **DENIED AS MOOT** because of his Amended Motion to Dismiss.

1

I.     **ALLEGED FACTUAL BACKGROUND**

This case arises from Vincent Young's death by suicide in a jail infirmary cell while in the pretrial custody of Harris County. Young was booked into the Harris County jail as a pretrial detainee on February 7, 2017. (Doc. 93 ¶ 58). During intake, he complained to jail staff of back pain, high blood pressure, anxiety, and depression. *Id.* The next day, Young was evaluated at the Harris County jail's mental health clinic and was prescribed medications for high blood pressure, pain, and detoxification. *Id.* at ¶ 59. He told medical staff that he was prescribed certain medications, including Xanax. *Id.* Leesa Brown, a nurse practitioner employed by Physician's Resource,[1] determined that Young should discontinue taking Xanax. *Id.* at ¶ 12. She indicated that Young was abusing Xanax, without any evidence for her conclusion, and ordered the abrupt cessation of Xanax without consulting Young's outside physician. *Id.* at ¶¶ 8, 12. In fact, Young had not been abusing Xanax. *Id.* at ¶¶ 12, 64. Brown ordered that the Xanax be replaced with Librium (a different benzodiazepine), and for Young to be "tapered" off the Librium. *Id.* at ¶¶ 8, 63. A known side effect of Librium is suicidal tendencies, and withdrawal from Xanax also carries suicide risks. *Id.* at ¶¶ 67, 70.

On February 10, 2017, Young was evaluated again. *Id.* at ¶ 60. Young told staff that he had been taking Xanax since he was seventeen years old, and that he felt defensive around others when not taking Xanax. *Id.* at ¶¶ 61-62. He also complained that he had racing thoughts, paranoia, and a sense that others were talking about him. *Id.* at ¶ 66. During this visit, Young was seen by Lamonica Kinch, a "Harris County Jail counselor" employed by The Harris Center, which contracts with Harris County to provide certain medical services. *Id.* at ¶ 9. Kinch determined

---

[1] Plaintiff's Fourth Amended Complaint does not identify what Physician's Resource is or its relationship to Harris County.

that Young did not require mental health services despite his diagnosis of a psychotic disorder, history of a psychiatric disorder, and the fact that he "was exhibiting signs and symptoms of depression when assessed." *Id.* at ¶ 9.

On February 12, 2017, Detention Officer Dogan observed that Young appeared depressed. *Id.* at ¶ 73. Another person in custody at the jail, Witherspoon, told Dogan that Young was suicidal, and that Young told Witherspoon he wanted to kill himself. *Id.* at ¶¶ 74-75. In response, Young was taken to a holdover cell while Dogan complete a psychiatric screening form. *Id.* at ¶ 76. However, Young returned only twenty minutes later and with injuries. *Id.* at ¶ 77. That night, Young was evaluated again by the jail's medical staff, who noted his irregular heartbeat due to withdrawal. *Id.* at ¶ 78. At some point on February 12, 2017, Young's blood pressure soared, he was found unresponsive, and he was rushed to Ben Taub Hospital. *Id.* at ¶ 13.

Young was released from the hospital at some unspecified time on February 12, 2017, and returned to the jail's clinic. *Id.* at ¶ 14. His blood pressure remained too high to return to the infirmary, where there are no physicians on duty. *Id.* at ¶¶ 14-15. In the clinic, Dr. Patricio Lau treated Young and initially noted his refusal to communicate. *Id.* at ¶ 17. He re-examined Young approximately two hours later and found that Young was likely in withdrawal. *Id.* at ¶ 18. Lau ordered that he be given high blood pressure medication and a different type of benzodiazepine, Ativan. *Id.* at ¶ 19. Lau recognized Young's serious medical need for a higher level of care, including his suicidal thoughts, but moved him to the infirmary where he would be unsupervised and would not be regularly monitored. *Id.* at ¶¶ 21-22, 25. Prior to returning to the infirmary, one nurse noted that Young has a "potential for noncompliance to self-care." *Id.* at ¶ 26. Another nurse practitioner noted that Young "complained of restlessness and appeared agitated," which are known Xanax withdrawal symptoms. *Id.* at ¶ 27.

3

Young was placed in a cell where he was out of visual sight, not closely monitored, and "essentially ignored." *Id.* at ¶¶ 27-28, 80. Although numerous officials were aware of Young's medical and psychological condition, including suicidal ideations, no one entered Young's cell from 1:50 pm to 7:10 pm. *Id.* at ¶ 86. At 7:10 pm, Detention Officer Abraham Romero was doing safety rounds when he found Young dead in his infirmary cell and hanging by a bed sheet. *Id.* at ¶ 81. About 75 minutes had elapsed since the prior monitoring round had been conducted, which exceeded the required time. *Id.* at ¶ 85. Young's family was notified of his death a day later on February 14, 2017. *Id.* at ¶ 1.

## II. PROCEDURAL HISTORY

Present Plaintiffs are Young's widow, father, and seven minor children represented through three "next friends."[2] Plaintiffs filed this suit against seven defendants on Deceber 30, 2018, and filed their First Amended Complaint on February 13, 2019. (Docs. 1, 22). Various Defendants filed Motions to Dismiss the First Amended Complaint, but the Court denied these as moot after Plaintiffs filed their Second Amended Complaint on May 13, 2019. (Docs. 39, 55).

On April 2, 2019, the parties agreed to a stay for sixty days. (Doc. 29). In June 2019, Plaintiffs notified the court that it initiated probate proceedings in May 2019. (Doc. 46). As part of the probate proceedings, Plaintiffs stated that they (1) filed an application to appoint a dependent administrator with waivers, signed by all Plaintiffs, (2) filed an application to determine heirship, and (3) were awaiting an appointment of a guardian ad litem, presumably for the minor children plaintiffs. *Id.*

---

[2]Melanie Young, as Representative of the Estate of Gwenetta Young, was also an original Plaintiff in this case but the Court previously ruled that she lacked standing.

In July 2019, Defendants Brown, Gonzalez, Harris County, Kinch, and The Harris Center filed Motions to Dismiss the Second Amended Complaint. (Docs. 54, 57, 59, 60, 65). On December 2, 2019, this Court held a hearing on all Motions to Dismiss and ruled from the bench. (Minute Entry 12/02/2019). The Court granted Brown's Motion "with leave to amend as to the Texas Constitution claims"; granted Gonzalez's Motion as to the Texas Constitution claims and as to Melanie Young's claims, but denied as to the remaining Plaintiffs' § 1983 claims; and granted Harris County's Motion as to the Texas Constitution claims and as to Melanie Young's claims, but denied as to the remaining Plaintiffs' § 1983 claims. *Id.*

The case remained idle while probate proceedings continued in order to ensure all of Young's heirs were identified. On October 12, 2020, Defendant Lau filed a Motion for Summary Judgment (Doc. 73). Thereafter, the Court ordered discovery to resume and the parties to submit a new docket control order. (Minute Entry 10/22/2020). On January 5, 2021, Plaintiffs filed an Amended Complaint titled "Second Amended Complaint" although it was, in fact, their Third Amended Complaint. (Doc. 85).

Defendants Kinch and the Harris Center (referred to as the "THC Defendants"), as well as Defendant Brown, also sought final judgment and severance in October 2020. (Docs. 78, 89). On January 14, 2021, the Court held a hearing on those motions. (Minute Entry 01/14/2021). Plaintiffs asked for leave to amend their pleadings yet again, so the Court ordered Plaintiffs to submit an amended complaint by January 19, 2021. (Minute Entry 01/14/2021). The live complaint is Plaintiffs' "Fourth Amended Complaint" ("FAC"). (Doc. 93).

Thereafter, Defendants Brown, Gonzalez, Harris County, Lau, and the THC Defendants filed renewed Motions to Dismiss. (Docs. 95-98). The Court decided to review the new Motions to Dismiss before resolving the severance dispute. (Minute Entry 01/29/2021). Before the Motions

5

to Dismiss ripened, the THC Defendants were dismissed by agreement. (Doc. 107). On July 8, 2021, the Court held a hearing on the Motions to Dismiss and made various rulings from the bench, but took the issues discussed below under advisement. (Minute Entry 07/08/2021).

After the hearing, Lau and Plaintiffs filed additional briefing. (Docs. 128, 131). On July 13, 2021, Gonzalez filed an Amended Motion to Dismiss. (Doc. 127). As a result, the Court will abstain from ruling on Gonzalez's arguments regarding his individual capacity claims, and will take up those arguments later with his Amended Motion to Dismiss. The Court will proceed on the pending issues concerning Harris County and Gonzalez in his official capacity.

## III. DISCUSSION

Before the Court are Motions to Dismiss filed by Defendants Lau, Harris County, and Gonzalez in his official capacity. At the hearing on July 8, Plaintiffs raised a new argument that Lau cannot assert qualified immunity as a defense. Gonzalez also renewed his argument that any claims brought against him in his individual capacity must be dismissed. Gonzalez insisted on reconsideration without making any new arguments. The Court took both arguments under advisement.

### A. Patricio Lau

Lau argues for dismissal because (1) Plaintiffs' medical negligence claims are time-barred; (2) Lau is entitled to qualified immunity against the constitutional claims; (3) Plaintiffs fail to adequately plead medical negligence; and (4) as raised for the first time in his surreply, that qualified immunity shields him from any claim.

#### 1. Whether the Statute of Limitations Bars Plaintiffs' Negligence Claims

Lau argues that Plaintiffs' medical negligence claims are barred by the statute of limitations in Section 74.251 of the Texas Civil Practice and Remedies Code. As discussed at the July 8 hearing, Plaintiffs' First Amended Complaint was filed on February 13, 2019 and included Lau as

6

a defendant. (Doc. 22). Lau's contention that he was not added as a defendant until May 13, 2019, is therefore meritless. Lau also argued at the July 8 hearing that the cause of action accrued at approximately 10:00pm on February 12, 2017, because that was when Lau last treated Young, so Plaintiffs' suit was one day too late. Plaintiffs maintain that Lau's treatment extended into the early hours of February 13, 2017.

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003) (citations omitted). Lau is correct that Texas law imposes a two-year statute of limitations period for medical negligence claims. Tex. Civ. Prac. & Rem. Code § 74.251. The cause of action accrues from (1) the date of the tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization. *Id.*; *Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008) (citations omitted). A plaintiff does not simply choose the latest date; rather, "if the date of the alleged tort is ascertainable, the limitations period begins at that time." *Mendoza*, 532 F.3d at 347. Although § 74.251 is not subject to the "discovery rule," which tolls a limitations period until the plaintiff knew or had reason to know of the injury, a plaintiff may be able to proceed under the Texas Constitution "open courts doctrine." *Id.* at 347-48 (citing Texas Const. art. 1 § 13).

In this case, whether Plaintiffs' claims are barred hinges on a difference of two hours. Without evidence, it cannot be discerned when Plaintiffs' cause of action accrued. Plaintiffs' Complaint plausibly alleges that Lau's treatment extended into the morning of February 13, 2017. Thus, dismissal is not proper because it is not evident from the pleadings that the action is barred.

### 2. Whether Plaintiffs' § 1983 claim is adequately pled

Lau also asserts the defense of qualified immunity. First, the Court determines whether Lau is eligible to *assert* qualified immunity. Answering in the negative, the Court next discusses why Plaintiffs' § 1983 claims adequately plead a constitutional violation.

#### i. Whether Lau May Assert Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Lau was a "medical professional treating a pretrial detainee on behalf of a governmental entity, [so he] was acting under color of state law for purposes of § 1983." *Sanchez v. Oliver*, 995 F.3d 461, 466 (5th Cir. 2021) (citation omitted). Even so, "it does not necessarily follow that [he] may assert qualified immunity." *Id.* (quoting *Perniciaro v. Lea*, 901 F.3d 241, 251 (5th Cir. 2018)). Whether qualified immunity is available depends on two things: (1) principles of tort immunities and defenses applicable at common law around the time of § 1983's enactment in 1871 and (2) the purposes served by granting immunity. *Filarsky v. Delia*, 566 U.S. 377, 383-84 (2012); *Sanchez*, 995 F.3d at 466 (citing *Perniciaro*, 901 F.3d at 251). The Supreme Court and Fifth Circuit have provided guidance on how those two prongs apply to defendants like Lau.

In *Richardson v. McKnight*, the Supreme Court held that privately employed prison guards are not entitled to qualified immunity. 521 U.S. 399, 412 (1997). Analyzing the first of the two prongs mentioned above, the Court found that there was no historical tradition of immunity available to private prison guards or private entities working for profit. *Id.* at 404-07. Turning to the policy rationales, the Court made several pertinent conclusions. *Id.* at 4-7-12. First, it found that the most important concern motivating qualified immunity—unwarranted timidity—was less

8

present in the case of a private company subject to competitive market pressures. *Id.* at 409-11. Second, privatization allowed private entities to ensure talented candidates were not driven away by liability concerns because the corporation could both indemnify employees through their insurance and offer the employees higher compensation. *Id.* at 411. Third, even if lawsuits distract a private employee from their duties, distraction alone is insufficient grounds for immunity. *Id.* at 411-12.

The Court narrowed its decision by explaining that it was dealing with the specific context "in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertakes that task for profit and potentially in competition with other firms." *Id.* at 413. The case "[did] not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential governmental activity, or acting under close official supervision." *Id.*

The Supreme Court later held that a private attorney *could* assert qualified immunity where he had been directly retained by a municipality on a temporary basis to assist in an internal investigation. *Filarsky v. Delia*, 566 U.S. 377, 393-94 (2012). *Filarsky* undertook the same historical inquiry and policy rationales as *Richardson* but reached the opposite conclusion. *See id.* at 384-92. However, the *Filarsky* decision "expressly distinguished" the case of "an individual retained, as an individual, to perform discrete government tasks" from the "private firm" in *Richardson* that was "systematically organized to assume a major lengthy administrative task." *Sanchez v. Oliver*, 995 F.3d 461, 468 (5th Cir. 2021) (quoting *Filarsky*, 566 U.S. at 393). In other words, *Filarsky* "involve[d] a private individual briefly associated with a government body"; precisely what *Richardson* did not involve. *Richardson*, 521 U.S. at 413.

9

In 2018, the Fifth Circuit found that two psychiatrists at Tulane University, which had contracted with Louisiana to provide mental health services, were closely comparable to the attorney in *Filarsky*. *Perniciaro v. Lea*, 901 F.3d 241, 251-52 (5th Cir. 2018). The court emphasized that Tulane University "is not 'systematically organized' to perform the 'major administrative task' of providing mental-health care at state facilities" because the university's primary function is not to provide healthcare services; it has many others. *Id.* at 254 (quoting *Richardson*, 521 U.S. at 409).

Just this year, the Fifth Circuit analyzed the landscape described above and held that a mental healthcare provider, employed by a large, for-profit company contracted by the county to provide care in a jail, was categorically ineligible to assert the defense of qualified immunity. *Sanchez*, 995 F.3d at 472. In *Sanchez*, the court relied on the lack of a tradition of immunity at common law for healthcare providers, the lack of support in the policy considerations discussed in *Richardson* and *Filarsky*, and the fact that the defendant was an employee of a large firm "systematically organized to perform a major administrative task for profit." *Id.*

In the present case, Lau was an employee of Mint Medical Physician ("Mint") and acting in that capacity during the relevant events. (Doc. 93 ¶ 17). Although not explicitly laid out in the Fourth Amended Complaint, Plaintiffs do allege that Lau was employed by Mint so the Court can plausibly infer Mint was contracted to provide healthcare services at Harris County jail. Put in different terms, Lau was not directly hired by Harris County, as an individual on a temporary basis, like the attorney in *Filarsky*. The name Mint Medical Physician also indicates that, unlike Tulane University in *Perniciaro*, its main function *is* to provide healthcare services and it is 'systematically organized" to perform that task. At the very least, the alleged facts allow the Court to plausibly infer that is the case. As a result, the Court finds *Sanchez* and *Richardson* on point.

Although *Perniciaro* also concerned an entity that contracted with a state carceral facility to provide healthcare, the Court finds *Perniciaro* limited in its applicability as illustrated by *Sanchez*. In *Sanchez*, much like here, the plaintiff was the mother of a man who had died by suicide that was carried out with bedding. 995 F.3d at 465, 475. The relevant defendant was a healthcare provider who was employed by a private company that contracted with the county jail. *Id.* at 464. *Sanchez* is not only more recent and factually on point, but it also concerns the same type of claim: Plaintiffs must "show that a medical provider acted with deliberate indifference to a serious medical need." *Id.* at 469. As the Fifth Circuit explained, the "key to untangling whether a tradition of immunity" existed is based "on the nature of the claim." *Id.* The *Sanchez* decision also clarified—in contradiction to *Perniciaro*—that the historical tradition of immunity at common law did not support making qualified immunity available to healthcare providers employed by a for-profit company contracted by a government entity. *Id.* at 468. *Perniciaro* engaged in a cursory historical analysis, thereby requiring the *Sanchez* court to engage in a more "robust" and "independent" inquiry into the common law tradition of immunity where it reached the opposite conclusion to *Perniciaro*. *Id.* at 467-68.

The foregoing decisions were rendered on summary judgment with the court having conducted a thorough analysis of the record to reach its conclusion. Those plaintiffs were afforded the opportunity to build the record, and Plaintiffs must be given that opportunity here. The Court will need to review additional facts and return to the immediate question at the summary judgment stage. In particular, more information will be necessary regarding Mint Medical Physician, its relationship with Harris County, and the comparison of Mint's circumstances to that of the defendants in the cases discussed. At this stage, the Plaintiffs' allegations allow the Court to conclude that Lau is more like the provider employed by a private firm in *Sanchez* than the retained

11

attorney in *Filarsky*.[3] As a result, Lau is not currently entitled to assert qualified immunity as a defense.

### ii. Whether Plaintiffs' Adequately Pled a Constitutional Violation

Although Lau is not entitled to assert qualified immunity, Plaintiffs must still adequately plead a constitutional violation. The constitutional right at issue here is a pretrial detainee's right under the Due Process Clause of the Fourteenth Amendment to "basic human needs, including medical care and protection from harm." *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996)). "Suicide is an objectively serious harm implicating the state's duty to provide adequate medical care." *Cope v. Cogdill*, 3 F.4th 198, 206 (5th Cir. 2021) (quoting *Arenas v. Calhoun*, 922 F.3d 616, 621 (5th Cir. 2019)).

Officials violate this right where they "had subjective knowledge of a substantial risk of serious harm to the detainee and responded to that risk with deliberate indifference." *Id.* at 206-07 (citation omitted). "Deliberate indifference is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Medical treatment that is unsuccessful or malpractice does not constitute deliberate indifference. *Sanchez*, 995 F.3d at 473 (citation omitted). Although deliberate indifference requires egregious conduct, plaintiffs need not prove that the official acted with the intent to cause harm. *Cope*, 3 F.4th at 207 (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

---

[3]Lau's surreply argument that *Sanchez* does not apply because it had not been decided at the time of the events at issue is misguided. Lau attempts to interject the second prong of qualified immunity, whether a constitutional right was clearly established at the time, into a more threshold inquiry. The relevant inquiry here precedes the two prongs of qualified immunity; the Court must first ask whether qualified immunity is available at all.

Plaintiffs allege that Lau acted with deliberate indifference to Young's serious medical needs, including protection from a known suicide risk. Plaintiffs also fault Lau for failing to resume his Xanax treatment and failing to contact Young's treating physician prior to treating his withdrawal symptoms. (Doc. 93 ¶¶ 8-29).

"[S]ince at least 1989," it has been clearly established in the Fifth Circuit that "pretrial detainees have a Fourteenth Amendment right to be protected from a known risk of suicide." *Sanchez*, 994 F.3d at 466 (quoting *Converse v. City of Kemah, Texas*, 961 F.3d 771, 775 (5th Cir. 2020)). Officials violate this right when they have "subjective knowledge that a pretrial detainee is a substantial suicide risk," and they respond with deliberate indifference "by failing to take reasonable measures to abate it." *Sanchez*, 995 F.3d at 473 (quoting *Converse*, 961 F.3d at 776). Deliberate indifference requires that Lau "knew of the substantial *risk* that [Young] would die or seriously injure himself"; Lau "did not have to know that [Young] *actually would die*, and certainly did not have to *intend* or *want* him to die." *Converse*, 961 F.3d at 776-77 (emphasis in original).

Officials must take measures to prevent suicides once they know of a suicide risk, although the contours "as to what those measures must be" are still developing. *Jacobs*, 228 F.3d at 394-95 (citation omitted). For example, the Fifth Circuit recently held that failing to protect a detainee from "the danger posed by [a] phone cord" was not enough to show a violation of a clearly established constitutional right. *Cope*, 3 F.4th at 211. In doing so, the court juxtaposed the less obvious risk of a phone cord to "the dangers posed by bedding, which is a well-documented risk that has been frequently used in suicide attempts." *Id.* at 210-11 (citing *Converse*, 961 F.3d at 777). It is established law in this Circuit that "giving obvious ligatures to a detainee who is known to be at risk of suicide constitutes deliberate indifference." *Sanchez*, 995 F.3d at 473 (citing *Converse*, 961 F.3d at 778-79). In *Sanchez*, a defendant healthcare provider made the decision to

13

place a detainee where the detainee had "ready access to blankets, other potential ligatures," and other means of self-harm, instead of placing them under suicide watch or other "meaningful suicide precautions." *Id.* at 473. Because the defendant knew the detainee was a suicide risk, this evidence was sufficient to reasonably infer that the defendant acted with deliberate indifference. *Id.* at 475.

Here, too, is a situation where Lau allegedly knew Young was at risk of suicide or self-harm yet failed to take the required measures to abate the harm. (Doc. 93 ¶¶ 20-21). Plaintiffs allege that Lau acted with deliberate indifference in failing to place Young in a level of care where he could be monitored and visually observed. *Id.* at ¶¶ 22, 25. Lau diagnosed Young as experiencing benzodiazepine withdrawal syndrome, which is associated with a risk of suicide. *Id.* at ¶¶ 19-20, 67. By the time Lau was treating Young, Young had orally articulated to another person that he wanted to kill himself, was observed as depressed by a detention officer, and a psychiatric screening form had been completed. *Id.* at ¶¶ 73-76. Still, Lau placed Young in the infirmary where he lacked any supervision or visual observation. As evidenced by the fact of Young's suicide, Lau also placed him where he had access to bedding. Shortly after, Young died by a suicide that was carried out with bedding—the primary method of suicide in jails according to the Complaint. *Id.* at ¶ 6.

As to Young's right to protection from the risk of suicide, Plaintiffs have adequately pled a claim of deliberate indifference. As to the allegations concerning Lau's failure to consult with Young's treating physician or failure to resume Xanax instead of another benzodiazepine, Plaintiff's' allegations constitute, at most, negligence. Lau may ultimately be found negligent for those actions, but they do not, without more, suffice to allege deliberate indifference. Nonetheless, Plaintiffs have adequately pled a constitutional violation and Lau's Motion to Dismiss must be **DENIED**.

14

### B. Harris County and Sheriff Gonzalez in His Official Capacity

Defendants Harris County and Sheriff Ed Gonzalez in his official capacity (hereinafter referred to as "Harris County") also sought dismissal of Plaintiffs' Fourth Amended Complaint. Their arguments are nearly identical to those previously resolved against them at the last hearing on their Motions to Dismiss. The Court previously ruled at the July 8 hearing that Plaintiffs had adequately pled municipal liability based on inadequate monitoring and understaffing. The Court briefly turns to the two remaining arguments for dismissal.

#### 1. Whether Plaintiffs' claims are barred under the Texas Tort Claims Act

Harris County repeats its prior argument that Plaintiffs' wrongful death and survivor claims are precluded by governmental immunity under the Texas Tort Claims Act ("TTCA"). At the hearing on Harris County's previous Motion to Dismiss, the parties agreed that Plaintiffs' claims against Harris County were pursuant to § 1983 and were not tort claims. (Doc. 71 at 12). Plaintiffs make no tort claims against Harris County.

#### 2. Whether Plaintiffs' survivor and wrongful death claims are time-barred

Lastly, Harris County argues that Plaintiffs' survivor and wrongful death claims are time-barred because all claims had to be brought by February 13, 2019, but Young's estate was not included as a party to the suit until May 13, 2019. This Court previously rejected those same arguments and ruled that Wynn, as the representative of Young's estate, may proceed with the survival claim. (Doc. 71 at 10). Because only representatives of the estate have the capacity to bring a survival claim under Texas law, the other Plaintiffs lack standing to bring a survival claim. *See Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005). Harris County does not make any new argument to change that ruling.

To recap the Court's reasoning, a claim is not *per se* time-barred when it is raised in a complaint that is timely filed but fails to state a claim by a representative on behalf of the estate. As the Texas Supreme Court explained, where a complaint is filed by an individual with a justiciable interest in her individual capacity, a later amended complaint that names that individual as the executor of the estate will "relate back" for the purposes of the statute of limitations. *Lovato*, 17 S.W.3d at 852-53; *see also Flores v. Cameron Co.*, 92 F.3d 258, 271-72 (5th Cir. 1996) (applying relation-back rule to Texas survival claim to reach same conclusion).

Here, Wynn originally filed a timely suit in her individual capacity as Young's widow, but later asserted her capacity as the representative of Young's estate in amended pleadings filed after the limitations period expired. Under Texas law, Wynn's survival claim is not time-barred. As to wrongful death cause of action, this Court previously ruled that all Plaintiffs apart from Melanie Young have standing. (Doc. 71 at 18-19). Melanie Young, as the representative of the estate of Young's deceased mother (Gwenetta Young), lacks standing because a wrongful death claim does not survive the beneficiary's death. *See Webb v. Livingston*, 2017 WL 2118969, at *5-6 (S.D. Tex. May 16, 2017) (applying Texas law).

## IV. CONCLUSION

The Court **DENIES** Lau's Motion to Dismiss in full and **DENIES** Harris County and Gonzalez's Joint Motion to Dismiss on all grounds that pertain to Harris County and Gonzalez in his official capacity. The arguments made by Gonzalez in his individual capacity are **DENIED AS MOOT** and will be taken up with his Amended Motion to Dismiss.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 25th of August, 2021.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE