**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **KIMALETHA WYNN et al.;** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **Civil No. 4:18- CV-4848** |
| | § | |
| **HARRIS COUNTY, TEXAS et al.,** | § | |
| | § | |
| *Defendants.* | | |

<u>**HARRIS COUNTY'S MOTION FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................................ii

TABLE OF AUTHORITIES .................................................................................iii

TABLE OF EXHIBITS ....................................................................................... viii

I.      NATURE AND STAGE OF PROCEEDINGS..............................................1

II.     SUMMARY OF ARGUMENT ....................................................................1

III.    STANDARDS OF REVIEW..........................................................................3

   A.     Standards To Establish Harris County Liability ........................................4

   B.     Municipal liability is based on deliberate indifference standard ...............5

IV.    ANALYSIS....................................................................................................6

   A.     Plaintiffs also fail to show episodic act or omission .................................6

   B.     Plaintiff must show county policymaker adopted unconstitutional policy with deliberate indifference ...................................................................10

   C.     No Xanax policy did not cause Mr. Young's suicide .............................12

   D.     Plaintiffs have failed to show *Monell*........................................................15

   E.     Plaintiffs have no evidence of understaffing and no expert on this issue .........................................................................................................20

   F.     DOJ report is not evidence .......................................................................22

   G.     Plaintiffs have no evidence that Mr. Young was subjected to excessive force ........................................................................................................23

   H.     There is no respondeat superior in 1983 cases........................................24

CONCLUSION .................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Adames v. Perez,*
  331 F.3d 508 (5th Cir.2003) ...............................................................9

*Adams Family Tr. v. John Hancock Life Ins. Co.,*
  424 F. App'x 377 (5th Cir. 2011) ......................................................22

*Anderson v. Dallas Cnty. Texas,*
  286 F. App'x 850 (5th Cir. 2008)........................................... 6, 7, 8, 25

*Armour v. Davis,*
  No. 6:18CV535, 2020 WL 2850140 (E.D. Tex. June 1, 2020)...........21

*Bell v. Wolfish,*
  441 U.S. 520 (1979)............................................................................5

*Brooks v. Taylor Cnty.,*
  No.  1: 20-CV-049-H, 2021 WL 4458380 (N.D. Tex. Sept. 29, 2021)................4

*Brown v. Miller,*
  519 F.3d 23 (5th Cir. 2008) ................................................................4

*Brumfield v. Hollins,*
  551 F.3d 322 (5th Cir. 2008) ..............................................................6

*Colle v. Brazos County, Texas,*
  981 F.2d 237 (5th Cir. 1993) ..............................................................6

*Conkling v. Turner,*
  18 F.3d 1285 (5th Cir. 1994) ..............................................................3

*Corley v. Prator,*
  290 F. App'x 749 (5th Cir. Aug. 25, 2008)........................................16

*Cox v. City of Dallas, Texas,*
  430 F.3d 734 (5th Cir. 2005) ..............................................................6

*Dawes v. City of Dallas*,
    No. 3:17-CV-01424-X-BK, 2020 WL 3603090 (N.D. Tex. July 2, 2020) ..........18

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*,
    675 F.3d 849 (5th Cir. 2012) .................................................................................16

*Domino v. Texas Dep't of Criminal Justice*,
    239 F.3d 752 (5th Cir. 2001) ...........................................................................5, 14

*Duckett v. City of Cedar Park, Tex.*,
    950 F.2d 272 (5th Cir. 1992) .................................................................................3

*Est. of Bonilla by & through Bonilla v. Orange Cnty., Texas*,
    982 F.3d 298 (5th Cir. 2020) ................................................................ 12, 13, 14

*Estate of Pollard v. Hood Cty.*,
    579 F. App'x 260 (5th Cir. 2014)................................................................ passim

*Estelle v. Gamble*,
    429 U.S. 97 (1976)............................................................................................5, 9

*Flores v. Cty. of Hardeman, Tex.*,
    124 F.3d 736 (5th Cir. 1997) .......................................................... 5, 10, 12, 25

*Freeman v. Tex. Dep't of Crim. Justice*,
    369 F.3d 854 (5th Cir. 2004) .................................................................................4

*Gibbs v. Grimmette*,
    254 F.3d 545 (5th Cir.2001) .................................................................................9

*Gobert v. Caldwell*,
    463 F.3d 339 (5th Cir. 2006) .................................................................................8

*Green v. Harris Cnty., Texas*,
    No. CV H-16-893, 2019 WL 2617429 (S.D. Tex. June 26, 2019)........ 3, 8, 24, 25

*Hall v. Thomas*,
    190 F.3d 693 (1999)..............................................................................................9

*Hamilton v. Seque Software, Inc.*,
    232 F.3d 473 (5th Cir. 2000) .................................................................................3

*Hare v. City of Corinth*,
   74 F.3d 633 (5th Cir. 1996) ...................................................................5, 11

*Harris v. Brazos County*,
   264 F.3d 1141, 2001 WL 822684 (5th Cir. Jun. 28, 2001) ..................................16

*Henderson v. Harris Cty.*,
   No. 4:18-CV-413, 2021 WL 1112400 (S.D. Tex. Feb. 24, 2021).......................23

*Hicks v. Charles Pfizer & Company, Inc.*,
   466 F.Supp.2d 799 (E.D. Tex. 2005)...................................................................21

*Hyatt v. Thomas*
   843 F.3d 172 (5th Cir. 2016)843 F.3d ................................................................13

*Inaimi v. Harris Cnty., Texas*,
   No. 4:21-CV-01832, 2022 WL 901556 (S.D. Tex. Mar. 25, 2022) ............. 22, 23

*Jacobs v. W. Feliciana Sheriff's Dep't*,
   228 F.3d 388 (5th Cir. 2000) .................................................................... 8, 24, 25

*Johnston v. City of Houston*,
   14 F.3d 1056 (5th Cir. 1994) ................................................................................3

*Lewis v. Sec'y of Pub. Safety & Corr.*,
   870 F.3d 365 (5th Cir. 2017) ...........................................................................8, 25

*Lozano v. Ortega*,
   No. EP-14-CV-239-KC, 2014 WL 6611595 (W.D. Tex. Nov. 19, 2014) ..........19

*McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*,
   66 F.3d 89 (5th Cir. 1995) .....................................................................................4

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658 (1978).................................................................................... passim

*Morales v. Carrillo*,
   No. EP19CV00217PRMATB, 2020 WL 3684864 (W.D. Tex. July 6, 2020).....20

*Morris v. Covan Worldwide Moving, Inc.*,
   144 F.3d 377 (5th Cir. 1998) ................................................................................3

*Nazerzadeh v. Harris Cnty*,
No H-08-0499, 2010 WL 3817149 (S.D. Tex. Sept. 27, 2010) ...........................11

*Olabisiomotosho v. City of Houston*,
185 F.3d 521 (5th Cir.1999) ........................................................ passim

*Peterson v. City of Fort Worth*,
588 F.3d 838 (5th Cir. 2009) ............................................. 15, 17, 18, 19

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir.2001) ............................................. 15, 17, 19, 20

*Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*,
988 F. Supp. 2d 395 (S.D.N.Y. 2013) ........................................ 20, 21

*Rich v. Palko*,
920 F.3d 288 (5th Cir. 2019) .................................................................4

*Roberts v. City of Shreveport*,
397 F.3d 287 (5th Cir. 2005) ...............................................................21

*Scott v. Moore*,
114 F.3d 51 (5th Cir. 1997) .................................................. 5, 7, 11, 25

*Sibley v. Lemaire*
184 F.3d 481 (5th Cir. 1999) ...................................................... 12, 13

*Shipley v. Statton*,
No. CIV.A. 1:08-CV-133-C, 2009 WL 1469716 (N.D. Tex. May 27, 2009).........9

*Stewart v. Murphy,*
174 F.3d 530 (5th Cir.1999) ................................................................9

*U.S. v. Houston Pipeline Co.*,
37 F.3d 224 (5th Cir. 1994) .................................................................4

Wallace v. Tex. Tech. Univ.,
80 F.3d 1042 (5th Cir. 1996) ..............................................................22

*Whitley v. Hanna*,
726 F.3d 631 (5th Cir. 2013) ...........................................................4, 16

*Wilder v. Morgan,*
  No. 6:20-CV-01383, 2022 WL 839128 (W.D. La. Mar. 18, 2022) .............. 19, 23

*Windham v. Harris County*,
  875 F.3d 229 (5th Cir. 2017) ................................................................................3

*Zarnow v. City of Witchita Falls, Tex.*
  614 F.3d 161 (5th Cir. 2010) .............................................................................19

## Rules

Fed. R. Civ. P. 56 ......................................................................................................3

**TABLE OF EXHIBITS**

1.  Affidavit of Sheriff Ed Gonzalez

2.  Excerpts from Deposition of Major Patrick Dougherty, August 25, 2022

3.  Autopsy Report for Vincent Young (HC/YOUNG 945-953)

4.  Personnel Order regarding Termination of Detention Deputy Abraham Romero, February 24, 2017 (HC/YOUNG 1891-1906)

5.  Combined Harris County Sheriff's Office Records relating to the death of Vincent Young (HC/YOUNG 749-762; 872-875; 1316-1334)

6.  Internal Affairs Division Investigation – In-Custody Death Review (HC

7.  Timelines of Video and Videos (HC/YOUNG 1120-1132; 150-161; 565-747; 4765-5196)

    *Videos Labeled HC\YOUNG 150-161; 565-747; and 4765-5196 will be Filed in Person with the Clerk as "Docket 190 - Exhibit 7 Videos".*

8.  Combined Pharmacy records from Walgreen Co. and Wal-Mart Stores, Inc. (HC\YOUNG 7476-7486; 7944-7960)

9.  Report of Expert for Harris County, Margo L. Frasier, JD (Docket No. 160-3)

10. Harris County Sheriff's Office's Medical Records for Vincent Young (HC/YOUNG – 78-149)

11. Combined Responses to Requests for Admissions by Kimaletha Wynn and Vincent Laday

12. Excerpts from Deposition of Kimaletha Wynn, July 9, 2021

13. Expert Report of Joseph V. Penn, MD, CCHP, FAPA (Docket No. 160-1)

14. 1200 MHU / Medical Daily Watch Schedule (HC\YOUNG 442-444; 1664-1726)

15. Business Records Affidavit for Harris County Sheriff's Office

16. Affidavit of Sgt. David Cuevas

17. Combined Records Regarding Two Suicide Deaths (HC\YOUNG 7473-75; 7961-8053)

18. Referral for Psychiatric Screening and 1200 MHU-CIRT Call-Outs (HC\YOUNG 7491; 8459-8460)

19. Ben Taub Medical Records

20. Combined Harris County Sheriff's Office Records Regarding Vincent Young (HC/YOUNG 79-80; 94-95; 1031; 2390; 5436-37; 5444-48; 5451; 5474, 5486; 5490; 5506-07; 5545; 5560-62; 5645; 5648; 5650; 5656)

21. Vincent Young Prior Jail Medical History

22. Excerpts from Deposition of Harold Layton, December 13, 2021

23. Combined 2009 DOJ Report, Response by Harris County, and letter closing investigation.

24. Excerpts from Deposition of Harvey Norris, August 8, 2022

Harris County files this summary judgment and will show the court the following:

## I.    NATURE AND STAGE OF PROCEEDINGS

Vincent Young committed suicide in the Harris County jail on Feb. 13, 2017.[1] He was admitted into the jail on Feb. 7, 2017 because he failed a drug test while on bond.[2]  Mr. Young had been in and out of the Harris County jail for 10 years on multiple charges.[3] After his death, his family filed suit primarily alleging civil rights violations against Harris County and other defendants.[4] Harris County, Dr. Patricio Lau and Sheriff Ed Gonzalez, in his individual capacity,[5] remain. Discovery is closed.[6]

The court dismissed all Texas constitutional claims and tort claims against Harris County. The court allowed this case to proceed on claims of failure to monitor and understaffing.[7]

## II.    SUMMARY OF ARGUMENT

Despite the tragic suicide of Mr. Young, Plaintiffs do not have a claim against Harris County on a failure to monitor or on understaffing.  Mr. Young was monitored

---

[1] Exhibit 3, Autopsy.
[2] Exhibit 6, IAD
[3] Exhibit 21, earlier medical history in jail, starting in 2010.
[4] Docket Entry (DE 93), Fourth Amended Complaint.
[5] A separate summary judgment was filed for Sheriff Gonzalez individually.
[6] DE 186.
[7] DE 136, p. 5, 16.

and the jail was not understaffed, particularly on the infirmary floor. Mr. Young was under almost constant monitoring, as video and medical record evidence demonstrate.

Next, tellingly, Plaintiffs have no evidence of jail understaffing. To support their claim of understaffing, Plaintiffs designated an expert they had not contacted who has sworn that he has no expertise in the jail and in fact has never worked in the jail.[8] Plaintiffs also attempted to designate their social worker-expert at his deposition to speak to understaffing, but he likewise has no such background or experience.[9] The jail in fact met all standards for staffing in 2017 when Mr. Young died.[10] There is no genuine dispute of material fact with regards to understaffing.

Plaintiffs additionally have no evidence to support their *Monell* claims.[11]

Plaintiffs have no evidence of excessive force as the causation on Mr. Young's death.[12] Plaintiffs have no evidence that Mr. Young had a prescription for Xanax.[13]

This summary judgment should be granted, and Plaintiffs' case dismissed because they have no evidence of material fact to support their lawsuit.

---

[8] Ex. 16 Cuevas affidavit.
[9] Ex. 24, Norris deposition excerpts.
[10] Ex. 2, Major Dougherty excerpts; Ex. 14, staffing on infirmary floor the night Mr. Young died.
[11] It is not clear the court advance this claim. DE 136. It is addressed in an abundance of caution.
[12] It is also not clear that the court advanced this claim. It will be addressed in an abundance of caution.
[13] Ex. 11; Ex. 8.

## III. STANDARDS OF REVIEW

The Fifth Circuit will review the district court's summary judgment ruling de novo, applying the same standards as the district court. *Windham v. Harris County*, 875 F.3d 229, 234 (5th Cir. 2017).

To be granted summary judgment, the pleadings and evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. *Green v. Harris Cnty., Texas,* No. CV H-16-893, 2019 WL 2617429, at *12 (S.D. Tex. June 26, 2019).

The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Then "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party

"cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted).

In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## A.   Standards To Establish Harris County Liability

Section 1983 "provides a claim against anyone who 'under color of any ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution … , and then shows that the violation was committed by someone acting under color of state law.' " *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 23, 236 (5th Cir. 2008)); see also, *Brooks v. Taylor Cnty.*, No.  1: 20-CV-049-H, 2021 WL 4458380, at *4 (N.D. Tex. Sept. 29, 2021).

Here, Plaintiffs allege claims based upon the Fourth and Fourteenth Amendments. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Under the Fourteenth Amendment, a "pretrial detainee ... ha[s] a clearly established ... right not to be denied, by deliberate indifference, attention to his serious medical needs." *In re: Estate of Pollard v. Hood Cty.*, 579 F. App'x 260, 265 (5th Cir. 2014) (per curiam) (citing *Flores v. Cty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997)). Even so, "[d]eliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

## B. Municipal liability is based on deliberate indifference standard

To establish municipal liability under § 1983 for deliberate indifference to an inmate's medical needs, a plaintiff must first show that <u>a municipal employee committed a constitutional violation</u>—here, deliberate indifference to Mr. Young's "known serious illness." *Estate of Pollard*, 579 F. App'x at 267 (citing *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (en banc)). Once a plaintiff establishes this underlying constitutional violation, liability can be extended to the municipality if the plaintiff can show that the violation resulted from a municipal policy or custom "adopted or maintained with objective deliberate indifference to the detainee's

constitutional rights." *Id.*; *see also Brumfield v. Hollins*, 551 F.3d 322, 331 (5th Cir. 2008). As a matter of law, there is no respondeat superior in civil rights cases. "We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978).

A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity. *Colle v. Brazos County, Texas*, 981 F.2d 237 (5th Cir. 1993). In order for incidents of misconduct by non-policymakers or employees to reflect the existence of a policy, the misconduct must be persistent and widespread. *Cox v. City of Dallas, Texas*, 430 F.3d 734, 748 (5th Cir. 2005). There must be sufficient incidents of specific prior misconduct so that actual or constructive knowledge is attributable to the final policymaker. *Cox*, 430 F.3d at 748-749 ("The policymaker must have either actual or constructive knowledge of the alleged policy."). Such evidence is totally absent in this case on the theory of failure to monitor and understaffing.

## IV. ANALYSIS

### A. Plaintiffs fail to show episodic act or omission

This case is a classic episodic act or omission case. Just like the *Anderson* case, Plaintiffs assert that Mr. Young would not have been able to commit suicide if suicide precautions had been enacted in accordance with Jail policy. *Anderson v. Dallas Cnty. Texas,* 286 F. App'x 850, 859 (5th Cir. 2008). "The plaintiffs ultimately

take issue with the DSOs' and physician assistants' failure to follow those policies and procedures. This is a classic episodic-act-or-omission case." *Id.*, citing to *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 526 (5th Cir.1999) ("[The inmate's] complaint turns on [the officers'] alleged failure to take better care of her, ... to medically screen her and secure her to treatment. Such a complaint perfectly fits the definition of the episodic omission."

And like this case, in *Anderson* the plaintiffs attempt to create a condition-of-confinement claim by also alleging that the individuals' failure to follow the procedures resulted from other county practices, namely, inadequate funding and staffing. "But even if true, taken together, the state actors were still 'interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission.' " *Id.*, citing to *Scott*, 114 F.3d at 53 (holding that even though the plaintiff asserted that under-staffing caused her injury, her actual complained-of harm was sexual assault, an episodic act). Because the plaintiffs cannot prove that Baines was subjected to cruel and unusual punishment without first proving that a state actor deprived him of his constitutional rights, the plaintiffs' case is an episodic-act-or-omission case.

Importantly, " '[i]f a plaintiff is unable to show that a county employee acted

with subjective deliberate indifference, the county cannot be held liable for an episodic act or omission.' " *Estate of Pollard*, 579 F. App'x at 267 (quoting *Anderson,* 286 F. App'x at 860 (5th Cir. 2008); *see also Olabisiomotosho,* 185 F.3d at 529. To show deliberate indifference to that Plaintiffs must meet the "stringent" standard of proving defendants (1) subjectively <u>knew</u> Mr. Young faced a substantial risk of serious bodily harm <u>and</u> (2) disregarded that risk by failing to take reasonable measures to abate it. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

Here are some of Mr. Young's interactions with county employees during his week at the jail:

- Deputy Romero who failed to make a timely round for 44 minutes on Feb. 13, 2017. There is no evidence that Romero knew one missed round would result in Mr. Young's death, or that he wholly disregarded any risk to Mr. Young. The evidence showed he missed one round, after making all others; and Romero's claim of understaffing is not supported by the evidence. Romero made a mistake; this is not deliberate indifference.[14]

---

[14] *Jacobs,* 228 F.3d at 398; *see also Green v. Harris Cnty., No.* CV H-16-893, 2019 WL 2617429, at *15 (S.D. Tex. June 26, 2019) ("At most, such a failure reflects negligence, not deliberate indifference."). This conclusion flows from the established principle that "**<u>a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right</u>**." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017).

- Dr. Patricio Lau, who saw Mr. Young twice after he returned from Ben Taub on the evening of Feb. 12,[15] ordered his blood pressure medicine increased and gave him a shot of anti-anxiety medicine, then placed him on the protocol, and ordered he be housed on the infirmary floor and observed. This care does not show deliberate indifference, and at best, only negligence which cannot support a 1983 action.[16]

- The nurses and other medical professionals who repeatedly asked him if he was suicidal on the day of his admission continuing when he returned from Ben Taub.[17]

- DO Dogan who filled out the suicide referral just after midnight on Feb. 12, 2017, per the jail policy, and the CIRT (Crisis Intervention Response Team)

---

[15] Ex. 19, Ben Taub records on Feb. 12, 2017.

[16] The deliberate indifference requirement is more than mere negligence in failing to supply medical treatment. *Gibbs v. Grimmette,* 254 F.3d 545, 549 (5th Cir.2001). A complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Hall,* 190 F.3d at 697 (citing *Estelle,* 429 U.S. at 105). Neither " 'negligence, neglect or medical malpractice' " gives rise to a § 1983 cause of action. A negligent or "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' " *Estelle,* 429 U.S. at 105–06. While inadequate treatment "may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy,* 174 F.3d 530, 534 (5th Cir.1999). Thus, mere "negligence is insufficient to support a finding of liability"; the Plaintiff must show that the Defendants were "deliberately indifferent." *Adames v. Perez,* 331 F.3d 508, 514 (5th Cir.2003)'; see also, *Shipley v. Statton*, No. CIV.A. 1:08-CV-133-C, 2009 WL 1469716, at *4 (N.D. Tex. May 27, 2009).

[17] *Id.*; Ex. 10, medical records, HC 94-96. Mr. Young was placed on the taper once before with no adverse consequences. Ex. 21; Ex. 20, collection of medical records where Mr. Young prior to 2017 denied he was suicidal.

staff who acted on the referral even though Mr. Young pretended to snore.[18] Mr. Young was placed moments later on a stretcher to the infirmary.

- To the nurse and staff who then placed Mr. Young on a stretcher, took him to the infirmary around 7 a.m. Feb. 12th, and then sent Mr. Young by ambulance to Ben Taub.[19]

Plaintiffs have no evidence to reach the deliberate indifference standard by the acts of any employees. Without a constitutional violation by an employee, the County has not violated Mr. Young's civil rights. *Pollard*, 579 F. App'x at 265; *Flores,* 124 F.3d at 738.

## B. Plaintiff must show county policymaker adopted unconstitutional policy with deliberate indifference

To state a claim against Harris County, Plaintiffs must show an official policymaker adopted an unconstitutional policy or custom with deliberate indifference. *Monell*, 436 U.S. at 693-94.

Further, when an inmate's alleged harm is caused by a specific event perpetuated by actors interposed between the inmate and the government, the case

---

[18] Ex. 18, Dogan referral (HC 7491) and CIRT report (HC 8459-8468); Ex. 7, video of Feb. 12 between 7 am and approximately 8:30 a.m. showing Mr. Young placed in cell, CIRT team comes, then Nurse Layton arrives. Mr. Young placed on rolling stretcher and taken to infirmary. Video shows him leaving to go to ambulance for Ben Taub. Ex. 10, HC 105 ("negative workup" from Ben Taub); Ex. 19.

[19] Ex. 22, Nurse Layton deposition excerpts; Ex. 7, video from Feb. 12, 2017 of CIRT team.

is an "episodic act or omission"[20] and the municipality cannot be liable until <u>after</u> a plaintiff "demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 648 (5th Cir. 1996). Accordingly, to find liability against Harris County, Plaintiffs must first show a county employee violated Mr. Young's rights with deliberate indifference.

But as shown below, Plaintiffs have failed to show an underlying constitutional violation. Without an underlying constitutional violation, Plaintiffs' claims against Harris County fail as a matter of law. Thus, if none of the individual defendants acted with subjective deliberate indifference, Plaintiffs cannot state a constitutional violation against the County. *Olabisiomotosho,* 185 F.3d at 526 (5th Cir. 1999)("To [hold a municipality liable], the plaintiff must demonstrate a municipal employee's subjective indifference and <u>additionally that the municipal employee's act 'resulted from a municipal policy ... adopted ... with objective deliberate indifference</u>.'")

---

[20] This is true even when plaintiff generally complains of inadequate jail staffing or funding. *See, Scott v. Moore,* 114 F.3d 51,53 (5th Cir. 1997); *Hare v. City of Corinth,* Miss., 74 F.3d 633, 648-49 (5th Cir. 1996); *Nazerzadeh v. Harris Cnty*, No H-08-0499, 2010 WL 3817149, at *4 (S.D. Tex. Sept. 27, 2010). Plaintiffs have no evidence of such in 2017. See Ex. 2, deposition excerpts of Major Dougherty; See Ex. 9. Margo Frasier expert report; See Ex. 14, Daily Watch Schedules showing state mandated ratio of 1:48 met on days Mr. Young was in the jail. Ex. 2, Dougherty excerpts that jail met staffing standards.

**C.    No Xanax policy did not cause Mr. Young's suicide**

The no Xanax standard at the Harris County jail did not cause Mr. Young's suicide.[21]    First, Mr. Young had been on this protocol before with no ill consequences.[22]    Next, there is no evidence that Mr. Young had a prescription, meaning no physician in fact assessed and prescribed him this dangerous, anti-anxiety medicine.

The Fifth Circuit has previously observed that "[s]uicide is inherently difficult for anyone to predict, particularly in the depressing prison setting." *Est. of Bonilla by & through Bonilla v. Orange Cnty., Texas*, 982 F.3d 298, 305–06 (5th Cir. 2020). In *Flores,* the court determined that the sheriff did not act with deliberate indifference when he took off of suicide watch an inmate who later committed suicide, despite the fact that the deceased had just been arrested after a one-hour standoff with police and "was not acting like himself." 124 F.3d at 738–39. Similarly, in *Sibley v. Lemaire*, the plaintiff offered evidence that jail personnel had "observed [Sibley] holding his Bible upside down while appearing to read from it, cleaning the walls of his cell with toilet paper, lying next to his toilet and staring into it.... [and] kicking the door to his cell." 184 F.3d 481, 484 (5th Cir. 1999). Sibley was having a psychotic episode and eventually blinded himself by attempting to

---

[21] Ex. 13, Dr. Penn's expert report.
[22] Ex. 11, admissions by Wynn and LeDay; Ex. 8, pharmacy records showing no purchases of Xanax by Mr. Young.  Ms. Wynn testified that she did not know her husband was taking Xanax, never filled a prescription for him or drove him to the doctor.

remove his own eyes. Nonetheless, the court concluded that "[a]lthough Sibley's actions seem to have become increasingly erratic, nothing he did so clearly indicated an intent to harm himself that the deputies caring for him could have only concluded that he posed a serious risk of harm to himself." *Id.* at 489.

Here, there were reports after his death that inmates noted crazy talk by Mr. Young, and while he was in the infirmary after returning from Ben Taub on the evening of Feb. 12, detention officers noted odd behavior. But this does not mean Mr. Young was suicidal.

The *Bonilla* opinion emphasized:

> The common thread is a reluctance to hold that generalized evidence of an inmate's mental illness invariably indicates a substantial risk of self-harm. Yet, that is essentially what Plaintiffs argue here. Apart from lacking support in the case law, the proposition lacks logical force, given the varied, individualized nature of mental illness. Bonilla presented with fewer warning signs than either Flores or Sibley. The circumstances of her arrest, booking and detention did not raise questions concerning her mental stability or capacity for self-harm. She had no history of suicidal tendencies. The evidence indicates that Bonilla did not request medical help, and her behavior in detention was unremarkable prior to her suicide. This evidence did not give rise to reasonable inferences that the individual defendants were aware of Bonilla's suicidal tendency, much less that they disregarded the risk. The district court correctly awarded summary judgment in the absence of evidence that Shafer or Dickerson "acted or failed to act with subjective deliberate indifference to the detainee's rights." .... Even if Plaintiffs' view of the process could be accepted, evidence of inadequate screening or a violation of facility procedure would not raise an issue of deliberate indifference without additional evidence that the officers or nurses knew that Bonilla was in fact at risk for suicide. *Hyatt*, 843 F.3d at 178 ("[E]ven if an officer responds without the due care a reasonable person would use—such that the officer is

only negligent—there will be no liability."). Finally, the report of Plaintiffs' expert Dr. Kiekbusch "does not support an inference that [Bonilla] was so obviously suicidal that [Defendants] must have known yet disregarded that risk." *Domino*, 239 F.3d at 756. …"

*Id.*

Here, nurses continually asked Mr. Young if he was suicidal.[23] When he outcried to DO Dogan, the officer had Mr. Young removed from his general cell, and DO Dogan filled out a psych referral.[24]  A few hours later, the CIRT team came to the holding cell and Mr. Young would not participate, and "snored."  Nonetheless, nursing staff came and took him to the clinic where he was sent to Ben Taub for high blood pressure. When he came back from Ben Taub, he again denied that he was suicidal.[25] He was seen by Dr. Lau, given his high blood pressure medicine and continued on the benzodiazepine protocol and then on the taper. He was admitted to the infirmary and he was continually observed until Romero missed one round for 44 minutes.[26]  Unfortunately, it was during this single missed round that Mr. Young killed himself.  Romero was fired for not following policy and doing his rounds.[27]

---

[23] Ex. 20.
[24] Ex. 18, Dogan referral and CIRT report.  See Ex. 7, video of CIRT evaluation of Mr. Young on the morning of Feb. 12, 2017, and then his removal from the cell and transport to Ben Taub.
[25] Ex. 10, HC 130-132.
[26] Ex. 10, HC 100-149.
[27] Ex. 4.

Plaintiffs' conclusory allegations about understaffing are not supported by evidence. The infirmary floor nurses and doctors, additionally, were not counted as part of the staffing.[28]

These acts do not show subjective indifference by county nurses, doctors or detention staff. Harris County should be granted summary judgment.

## D.    Plaintiff has failed to show *Monell*

To show *Monell* pattern and deliberate indifference, Plaintiffs must show (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001).

An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Piotrowski*, F.3d at 579). *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (holding that a plaintiff must identify a policymaker, a policy or custom, and *a violation of constitutional rights* whose "moving force," or cause, is the policy or custom (emphasis added)); *Estate of Pollard*, 579 F. App'x at 267 (holding that because the plaintiffs were unable to

---

[28] Ex. 14;  Ex. 2.

establish any underlying constitutional violation by any municipal employee, the claims against the city also failed as a matter of law); *Olabisiomotosho*, 185 F.3d at 526 ("To [hold a municipality liable], the plaintiff must demonstrate a municipal employee's subjective indifference and additionally that the municipal employee's act 'resulted from a municipal policy ... adopted ... with objective deliberate indifference.' "); *Corley v. Prator*, 290 F. App'x 749, 752 (5th Cir. Aug. 25, 2008) (same); *Harris v. Brazos County*, 264 F.3d 1141, 2001 WL 822684, *1 (5th Cir. Jun. 28, 2001) (not selected for publication) (holding that because plaintiff did not show that county officials denied her adequate medical care, she did not establish a claim against the county).

An underlying constitutional violation is likewise required to show a failure to train. *See Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) (explaining that "inadequate supervision, failure to train, and policy, practice or custom claims fail without an underlying constitutional violation"); *see also Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866–67, 869 n.13 (5th Cir. 2012) (same).

Plaintiffs allege four deaths under Sheriff Gonzalez (DE 93, pp.14-15). This is misleading. Only Antonio Lee Williams and Christopher Hendricks committed suicide before Mr. Young in February of 2017.[29] No deaths after Mr. Young show

---

[29] Ex. 23, HC 7471-7475.

pattern and practice that would put the policymaker on notice of Mr. Young's suicide. None of the suicides were related to Xanax or staffing claims, pre- or post Mr. Young. Two examples in one of the largest jail systems in the country does not make *Monell*. *Monell* requires a custom and practice to be that of the final policy maker for the county at the time of the constitutional injury. Examples of subsequent events do not satisfy that requirement. As a matter of law, there is no *Monell.*

Plaintiffs do not have pattern and practice in a jail that processes nearly 150,000 or more inmates a year,[30] and they generally allege other "bad acts" in the jail to shore up *Monell.* They cannot do this, under precedent.

To show *Monell* pattern and deliberate indifference, Plaintiffs must show (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson,* 588 F.3d at 847 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Piotrowski*, F.3d at 579).

Also, under the law, if none of the individual defendants acted with subjective deliberate indifference, Plaintiffs cannot state a claim of a constitutional violation

---

[30] See Ex. 23, DOJ report at pages 46-48, finding deaths statistically minor.

against the County. *Olabisiomotosho,* 185 F.3d at 526.

The Fifth Circuit requires the plaintiff to plead more than a list of past actions alleged to be unconstitutional (as Plaintiffs have done in this case), a plaintiff must place these past occurrences in context to support the inference that the municipality knew about and accepted a wide-spread course of unconstitutional conduct. For example, in *Peterson*, the plaintiff identified 27 excessive force complaints of against the Fort Worth Police Department over approximately four years. The court held that these prior occurrences did not support a ***Monell*** claim because the plaintiff "failed to provide context" to those 27 excessive force complaints sufficient to show that the complaints reflected municipal policy.

As another example, six incidents of excessive force within a five-year period is not sufficient under Fifth Circuit precedent to constitute a pattern "**so common and well-settled as to constitute a custom that fairly represents municipal policy**" and does not "warrant the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Dawes v. City of Dallas*, No. 3:17-CV-01424-X-BK, 2020 WL 3603090, at *5 (N.D. Tex. July 2, 2020).

Here, Plaintiffs allege "30 deaths" in a 12-year period of time in the jail, but have no proof to meet *Monell*. They offer no *Peterson* context, or all the actual names of these 30 people. As tragic as any suicide is, 30 deaths (Plaintiffs offer no

proof of these 30 deaths) over 12 years with the prison population of approximately

2.4 million in a county of 4-5 million people, is infinitesimal.[31]

Plaintiffs have not shown a pattern of unconstitutional conduct showing "similarity and specificity; prior indications cannot be for any and all bad or unwise acts, but "rather must point to the specific violation in question." *Peterson*, at 850. This is exactly what they have done. "For a custom or practice to be considered a de facto policy, however, a plaintiff must allege facts 'showing a pattern of abuses that transcends the error made in a single case.' " *Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *15 (W.D. Tex. Nov. 19, 2014) (quoting *Piotrowski*,

---

[31] A plaintiff may point to prior occurrences of constitutional violations to plead a ***Monell*** claim against a municipality. Those **prior occurrences**, however, must be not only similar to conduct at issue in the plaintiffs' case but also persistent as opposed to sporadic or isolated. This persistency requirement ensures that the alleged **pattern** of unconstitutional actions by municipal officers is based on conduct that has "occurred for so long and with such frequency that the course of conduct demonstrates the [municipality's] knowledge and acceptance of the disputed conduct." *Zarnow v. City of Witchita Falls, Tex.,* 614 F.3d 161.169 (5th Cir. 2010). Twenty-seven incidents in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy." In the Wilder case, allegations of 107 lawsuits filed against LPD from 2010 through 2019 did not show such a wide-spread practi**ce because the First Amended Complaint does not show that these lawsuits involve conduct similar to the conduct at issue in the present case. Fourteen cases of excessive force over at 13 year period, was insufficient.** *Wilder v. Morgan,* No. 6:20-CV-01383, 2022 WL 839128, at *4 (W.D. La. Mar. 18, 2022), Moreover, as with *Peterson*, Mr. Wilder did not place these fourteen complaints in context to show that they reflect a pattern that rises to the level of LCG policy, much like in our case. Nor does Wilder's allegation that 1,172 use-of-force reports were filed by LPD officers from 2010 through 2019 show such a pattern without additional context. **A use-of-force report standing alone does equate to a constitutional violation absent facts showing the context for that use of force. Wilder pleads no facts showing that this number of use-of-force reports is so unusual or extreme that it supports an inference of a persistent pattern of excessive force violations. For example, Wilder does not place this statistic into the context by showing the total number of arrests, nor does he offer comparisons to other, similarly situated municipalities**. Plaintiffs have failed to do this as well in our case.

237 F.3d at 582). "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski* 237 F.3d at 578; see also, *Morales v. Carrillo*, No. EP19CV00217PRMATB, 2020 WL 3684864, at *7 (W.D. Tex. July 6, 2020), report and recommendation adopted as modified, No. EP-19-CV-217-PRM, 2021 WL 664854 (W.D. Tex. Feb. 19, 2021).

Summary judgment must be granted as Plaintiffs have no *Monell* evidence of pattern and practice.

## E.    Plaintiffs have no evidence of understaffing and no expert on this issue

The district court said Plaintiffs have adequately pled this issue.  But now at the summary judgment stage, they have no evidence.

First, tellingly, Plaintiffs designated Sgt. David Cuevas as their non-retained expert on understaffing. But Cuevas had no idea he was designated, never spoke with Plaintiffs' counsel and has no expertise in jail staffing.[32]

Then Plaintiffs then tried to boot-strap Mr. Norris, their social worker expert, to this understaffing issue by offering exhibits at Mr. Norris' deposition for the first time.[33]  Norris opinion does not cover jail staffing. Defendant objected and have filed a separate motion to strike Norris. "[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404

---

[32] Ex. 16, Sgt. Cuevas affidavit.
[33] Ex. 24, Norris deposition excerpts

(S.D.N.Y. 2013).

One of the attachments is a lawsuit on understaffing that has been dismissed. Plaintiffs in that case have been given a chance to replead by Sept. 8, 2022. [34]

An expert report must "provide the foundation for [an] opinion," including factual assertions. *Id.* There is no foundation for this understaffing opinion from Norris and he does not express this opinion in his report nor did he express it at his deposition.[35]

At trial, "the factual assertions (of understaffing) would have to be supported by admissible evidence" and the expert "could not present these facts to the jury for the purpose of describing what actually took place." *Id.* Here, Plaintiffs are caught without admissible evidence for one of their core claims. They cannot use Norris, a social worker, to establish understaffing in the jail in 2017. He has no foundation to offer an opinion, and has not been designated to do such. Likewise, Mr. Norris has no background, education or training in jail staffing. Plaintiffs offered exhibits at Mr. Norris' deposition that are wholly hearsay or not evidence.[36]

---

[34] See Docket of *Doe 1 et al. v. Harris County, et al.*, 4:21-cv-3036, Honorable Judge Andrew Hanen, Southern District of Texas – Houston Division

[35] Norris expert report; Depo excerpts from Norris Depo.

[36] The Fifth Circuit has stated that newspaper articles are "classic, inadmissible hearsay" and cannot be used to defeat summary judgment. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005); See also, *Hicks v. Charles Pfizer & Company, Inc.*, 466 F.Supp.2d 799, 795 (E.D. Tex. 2005); *Armour v. Davis*, No. 6:18CV535, 2020 WL 2850140, at *12 (E.D. Tex. June 1, 2020)( "The Defendants are correct in their assertion that these exhibits are hearsay and are not competent summary judgment evidence."). Lawsuits also are not competent summary judgment evidence. Plaintiffs wrong tried to offer a lawsuit over staffing as evidence in this 2017 case. "First, Forbes

In addition, the daily watch schedules show the jail was appropriately staffed on the 1:48 ratio, and on the day of Mr. Young's death, the infirmary was staffed at approximately 1:20, not including the medical staff of doctors and nurses.[37]

Plaintiffs have no evidence that the jail was understaffed when Mr. Young died on Feb. 13, 2017. Summary judgment must be granted.

## F. DOJ report is not evidence

This court has previously found that reliance on this 13-year-old report misplaced.[38] In the *Inaimi* case, this court ruled a plaintiff's reliance on the same report was recently deemed insufficient to plausibly allege a failure to train, discipline, and supervise claim under Section 1983 against a sheriff. *Inaimi v. Harris Cnty., Texas*, No. 4:21-CV-01832, 2022 WL 901556, at *3 (S.D. Tex. Mar. 25, 2022)

> Quoting another recent case, this court noted:

> Plaintiff's claims rely on a 2009 Department of Justice ("DOJ") report, which investigated the use of force in the Harris County Jail, and other excessive force cases. In reference to the 2009 DOJ report, the Court previously warned Plaintiff that he "may not proceed with this case without evidence beyond a bureaucratic report from 2009" and that he "must focus on facts and not clutter his complaint with citations and quotes." However, Plaintiff continues to heavily reference the 2009 DOJ report and other excessive force cases.

---

has pointed to the allegations of two complaints from pending litigation in the Southern District of Texas, but those pleadings are not competent summary judgment evidence." Forbes v. Harris County et al.,DE 51, p. 11, 4:17-cv-02256, Judge Lee Rosenthal, citing to Adams Family Tr. v. John Hancock Life Ins. Co., 424 F. App'x 377, 381 (5th Cir. 2011) ("Pleadings are not competent summary-judgment evidence." (citing Wallace v. Tex. Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) ).

[37] Ex.14, HC 442-444.
[38] Ex. 23, 2009 DOJ report and 483-page response by Harris County; letter closing investigation.

*Id., quoting Henderson v. Harris Cty.*, No. 4:18-CV-413, 2021 WL 1112400, at *4 (S.D. Tex. Feb. 24, 2021), *report and recommendation adopted*, No. 4:18-CV-00413, 2021 WL 1111104 (S.D. Tex. Mar. 23, 2021) (granting defendant's motion to dismiss and dismissing with prejudice).

The DOJ report does not help plaintiffs. In fact, the nearly 500-page response shows suicides were a very rare occurrence.[39]  Further, the jail has never been taken over by DOJ and DOJ has released the jail from its investigation.[40]

## G. Plaintiffs have no evidence that Mr. Young was subjected to excessive force

Plaintiffs have one statement from one inmate and one hearsay "tipster" who tells an incredible story wholly unsupported.[41]  Further, the day that this alleged excessive force[42] occurred, Mr. Young was almost constantly under video observation or jail personnel, and personnel at Ben Taub or the infirmary at the jail. And Mr. Young's autopsy shows no injuries other than his injuries to his neck.[43]

Plaintiffs have no evidence that excessive force killed Mr. Young.  Only speculation. Summary judgment should be granted on this issue. See also, *Wilder v. Morgan*, No. 6:20-CV-01383, 2022 WL 839128, at *4 (W.D. La. Mar. 18, 2022).

---

[39] Ex 23.
[40] Ex.  23; Note that a page 46-48 of the response makes statistical comparison.
[41] Ex. 5.
[42] DE 93, Fourth Amended Complaint.
[43] Ex. 7: A review of the 30 videos on 02-11-2017, Young left the cell at the 6:30 mark of the "19h05m58s" video with a red pass. He returned to the cell at the 5:40 mark of the "19h44m01s" video. This is the only time he exited the cell on 02-11-2017.

## H. There is no respondeat superior in 1983 cases

Plaintiffs cannot show DO Romero, Dr. Lau or any other staff member acted according to a municipal policy adopted with objective deliberate indifference. Harris County sent Mr. Young to Ben Taub for high blood pressure; Romero was trained to make the 25-minute observations, and missed one; Dr. Lau treated a patient who had just denied he was suicidal, increased his medication, saw him again later that night, and ordered him to stay on the infirmary floor for observation. The nurses repeatedly asked Mr. Young is he was suicidal. When he did outcry once, he was removed from his cell, the CIRT team responded and he was sent to Ben Taub. This is not reflective of policies or actions adopted with objective deliberate indifference.

For example, and directly on point, the Fifth Circuit has ruled that a jail employee's failure to abide by a policy requiring close-watch checks "evinces[,] at best, negligence on the part of" the jail employee. *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 398 (5th Cir. 2000); *see also Green v. Harris Cnty., No.* CV H-16-893, 2019 WL 2617429, at *15 (S.D. Tex. June 26, 2019) ("At most, such a failure reflects negligence, not deliberate indifference."). This conclusion flows from the established principle that "**a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right**." *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017).

Thus, while Romero violated the observation policy and he was fired, his failure to make an observation for 44 minutes, under *Green* and *Jacobs* is a most negligence not deliberate indifference. And failure to follow the observation policy is not establish a constitutional violation.[44] See also, *Pollard,* 579 F. App'x at 265 ; *Flores,* 124 F.3d at 738.

As the Fifth Circuit found in *Hood,* to impose liability on a municipality under § 1983, plaintiffs must first show that a municipal employee committed a constitutional violation—here, deliberate indifference to an inmate's known suicide risk. *See Scott v. Moore,* 114 F.3d 51, 54 (5th Cir.1997) (en banc). Once this underlying constitutional violation is established, liability can be extended to the county if plaintiffs can show that the violation "resulted from a Hood County policy or custom adopted or maintained with objective deliberate indifference to the detainee's constitutional rights." *Id.* "If a plaintiff is unable to show that a county employee acted with subjective deliberate indifference, the county cannot be held liable for an episodic act or omission." *Anderson,* 286 Fed.Appx. at 860; *see also Olabisiomotosho,* 185 F.3d at 529. Because the *Pollard* plaintiffs failed to show an employee violated the inmate's rights, the County could not be held liable under *Monell.*

---

[44] Ex. 4, Letter firing Romero, detailing policy violations.

## CONCLUSION

Plaintiffs have no evidence of understaffing or an expert on such.

They have no evidence of excessive force as a cause of Mr. Young's death.

Plaintiffs do not have *Monell* pattern and practice on suicides.

Deputy Romero missed one round, after making all the rest. He was fired for not following policy. This is not deliberate indifference.

Mr. Young repeatedly told nurses he was not suicidal, and when he did outcry, a referral was made, yet he "snored" and ignored the CIRT team.

He was nonetheless sent to Ben Taub to be evaluated. Dr. Lau evaluated him, placed him back on his medicine, and ordered him to be placed on the infirmary floor.

Plaintiffs cannot rely on respondeat superior; they have shown no deliberate indifference.

Summary judgment must be granted.

Respectfully submitted,

/S/ Suzanne Bradley

OF COUNSEL:

**SUZANNE BRADLEY**
Assistant County Attorney
Federal ID No. 24567
State Bar No. 00793375

CHRISTIAN D. MENEFEE
HARRIS COUNTY ATTORNEY
TEXAS BAR NO. 24088049

**PAM REA**
Assistant County Attorney
Federal ID No. 20799
State Bar No. 00792790
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5330
suzanne.bradley@harriscountytx.gov
pam.rea@harriscountytx.gov

ATTORNEYS FOR DEFENDANTS
HARRIS COUNTY AND SHERIFF ED
GONZALEZ

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been sent to all

counsel of record via ECF notification on September 1, 2022. Exhibit 7 is mostly

videos and a large file. It is being filed only with the clerk at this time; however, the

Bates numbers have been indicated within the foregoing document and such files

have already been provided to all parties prior to this motion.

/s/Suzanne Bradley

Suzanne Bradley
Assistant County Attorney